584 A.2d 863

LOUIS CRAIN, APPELLANT, v. STATE OF NEW JERSEY,
DEPT. OF THE TREASURY, DIVISION OF
PENSIONS, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 17, 1990—Decided January 14, 1991.

Before Judges PETRELLA, MUIR, Jr. and BROCHIN.

*Robert A. Durand,* attorney for appellant (*Robert A. Durand,* on the brief).

*Robert J. Del Tufo,* Attorney General of New Jersey, attorney for respondent (*Michael R. Clancy,* Assistant Attorney General, of counsel and *Patrice M. Connell,* Deputy Attorney General, on the brief.)

The opinion of the court was delivered by

BROCHIN, J.A.D.

Sergeant Louis Crain has appealed from a final decision of the Board of Trustees of the State Police Retirement System. The Board of Trustees held that he was "totally and permanently disabled" and, effective March 1, 1990, "should be retired" with a disability pension from his position as a member of the New Jersey State Police. For the following reasons, we reverse the decision and remand the case to the Board of Trustees.

On February 7, 1969, at the age of 29, Sergeant Crain was sworn in as a Trooper in the New Jersey State Police. In July 1983, he was promoted to Sergeant, and he served at the Moorestown barracks on general traffic duty. In September 1983, as the result of episodes of lightheadedness, he underwent diagnostic heart catherization and then double coronary by-pass surgery. He returned to light duty January 23, 1984 and to full duty February 13, 1984.

According to Sergeant Crain's version of events, from January 1984 to February 1986, he performed all the duties of his position, including field duties and supervision of patrols.[1] An affidavit which he submitted to the Board of Trustees states:

> In February I received a letter dated February 20, 1986, from Colonel Clinton L. Pagano, Superintendent of the Division of State Police advising that I was being placed in Permanent Disability Status.... Other than being restricted from wearing my uniform in public and doing routine patrols, I continued in the same duty assignments as prior to being placed in Permanent Disability Status. Despite the letter of February 20, 1986, I was not placed in protective assignment until November of 1987, when I, myself, brought it to the attention of the superintendent that I had not been placed in protective duty assignment.

---

[1]Appellant's appendix on appeal includes a document which is not identified but which appears to be a medical record kept by the State Police. The document shows that, as the result of an episode of irregular heart beats, Sergeant Crain was "off duty" from August 29, 1984 to September 26, 1984, that he then returned to "light duty" and continued on "light duty" until December 7, 1988, and that he was put on "limited duty" on December 16, 1988. The record does not include any entries beyond the latter date.

On May 18, 1989, the State Police filed an application seeking Sergeant Crain's retirement for disability. He objected to the application. A hearing was held before the Board of Trustees, but no testimony was presented. Sergeant Crain's brief asserts that when he admitted having undergone coronary by-pass surgery in 1983, the Deputy Attorney General who was advising the Board of Trustees took the position that, as a matter of law, he was disabled from continuing as a member of the New Jersey State Police. The Division of Pensions has not disputed Sergeant Crain's assertion, and it is consistent with the position that the Division has taken before us.

At the hearing before the Board of Trustees, Sergeant Crain requested the opportunity to present additional evidence. The Board of Trustees agreed. It permitted him "to submit any medical evidence or written testimony." He subsequently submitted his affidavit and medical reports, and they became part of the record before the Board of Trustees. Apparently, no oral testimony was presented pertaining to his medical condition.

The Board of Trustees reviewed the record, determined that Sergeant Crain was disabled, and retired him with ordinary disability retirement benefits effective March 1, 1990.

On appeal, Sergeant Crain asserts that the Board of Trustees erred by ordering his involuntary retirement solely because he underwent coronary by-pass surgery, without having considered his present medical condition. The Division of Pensions argues that the undisputed fact of Sergeant Crain's coronary surgery is all the evidence needed to sustain the determination that he is physically incapacitated from the performance of the duties of a State Trooper. It also contends that there is other substantial evidence in the record which supports the Board of Trustees' decision.

When an application is filed for disability retirement from the State Police, the retirement system must refer the application to its medical board. *N.J.S.A.* 53:5A–11a. The medical board

consists of three physicians who have been specially designated by the State Treasurer after consultation with the Director of the Division of Pensions. *N.J.S.A.* 53:5A–30m. The medical board is required to "designate a physician or physicians to examine the applicant and the report of the medical board shall be considered by the board of trustees in acting upon such application." *N.J.S.A.* 53:5A–11a. Before a member of the State Police can be retired for disability, the medical board must,

> after a medical examination of such member, ... certify that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the Division of State Police which the Superintendent of State Police is willing to assign to him and that such incapacity is likely to be permanent and of such an extent that he should be retired.

*N.J.S.A.* 53:5A–9a; *see also N.J.S.A.* 53:5A–31. The medical board is required to make a written report of its conclusions and recommendations to the Board of Trustees. *N.J.S.A.* 53:5A–30m.

In the present case, the entire substance of the medical board's written report of its conclusions and comments reads as follows:

> This State Police Sergeant is totally and permanently disabled because of coronary artery bypass surgery (1983) associated with arteriosclerotic cardiovascular disease.

The decision of the Board of Trustees consists of the following:

> Following the board's review of all medical evidence introduced and documented, it was their decision and determination that Mr. Crain is totally and permanently disabled and should be retired. The board thereafter approved the employer's filing of an involuntary disability application effective March 1, 1990.

The physician whom the medical board designated to examine Sergeant Crain was Dr. Leslie Squires, a cardiologist. Sergeant Crain was directed to report to Dr. Squires for an examination "[i]n order that the Board of Trustees, State Police Retirement System can properly evaluate the application" that had been filed for his disability retirement. Dr. Squires examined Sergeant Crain on September 14, 1989. His letter to the Division of Pensions reported that the cardiac examination of

Sergeant Crain was "unremarkable" and showed no "evidence of peripheral edema, or left ventricular dysfunction." The report continues:

> Overall, Mr. Crain appears to have done quite well following his bypass surgery. This type of examination does not allow for adequate evaluation of either ischemia[2] or ventricular arrhythmias, although by history both are clearly well controlled. Mr. Crain clearly would have no problem continuing in his present duties. However, an assessment of his suitability for carrying out the duties of an active duty trooper would require that he have further testing with an exercise test with Thallium to evaluate ischemia and a Holter Monitor to evaluate his ventricular arrhythmias. Otherwise, I have no reservations about Mr. Crain continuing in his present duties.

The "further testing" which Dr. Squires considered necessary in order to assess Sergeant Crain's "suitability for carrying out the duties of an active duty trooper" was not conducted. Sergeant Crain states in his brief that this testing is non-invasive and that he has been willing to submit to it.

The record that has been presented to us does not contain a direct explanation of why the additional tests which Dr. Squires thought would be necessary to assess Sergeant Crain's capacity to function as an active trooper were not carried out or, for that matter, why Sergeant Crain's case was not treated as a contested matter. However, the probable explanation is contained in an Attorney General's letter opinion to the Division of Pensions, dated the day before the Board of Trustees first considered Sergeant Crain's retirement. The argument contained in that letter is substantially the same as the argument that the Division of Pensions has now presented to this court.

The purpose of the letter was "to assist the Board in determining how to assess" whether members of the State Police with "known coronary artery disease, or who have had heart attacks or coronary bypass surgery" have the "kinds of medical problems which would, if found to exist, compel a disability retirement." The letter states that after the United States

---

[2]"Ischemia" is defined as "a local anemia caused by mechanical obstruction of the blood supply."

Supreme Court decided [3] that the federal Age Discrimination in
Employment Act of 1967 [4] could constitutionally be applied to
state employees, the New Jersey Attorney General issued an
opinion advising that the New Jersey law requiring State Police
to retire prior to age 70 could not be enforced because there
was an insufficient legislative record showing that the age
requirement was a *bona fide* occupational qualification and
therefore permissible under the federal law. *See* 1978–1984
Op. Att'y Gen. of N.J. 274 (1983). In response to that opinion,
the Division of State Police conducted a special study and
prepared a report which showed that heart conditions which
could potentially disable State Troopers from performing their
arduous duties were so prevalent among men over 55 years of
age that limiting service as a member of the State Police to
troopers younger than 55 was a *bona fide* occupational qualifi-
cation. A new statute, with appropriate legislative findings,
was then enacted and it established 55 as the mandatory
retirement age. The re-enacted statute was sustained in *Equal
Employment Opportunity Comm'n v. New Jersey*, 631
*F.Supp.* 1506, 1513–1515 (D.N.J.1986), *aff'd* 815 *F.*2d 694 (3d
Cir.1987).

From this history, the Attorney General drew the following
conclusion:

[A] trooper of *any age* with known or symptomatic significant coronary artery
disease poses a similar or increased risk to himself, his fellow officers or the
public if he is permitted to remain on the force, and he may not, therefore, be
allowed to continue in service.

The Board of Trustees' inquiry in these matters is therefore limited. If the
medical records of the officer demonstrate that he has a history of heart attack,
coronary bypass surgery, or an occlusion of 50% or greater, the officer is as a
matter of law presumptively disqualified from safely and efficiently performing
the duties of a New Jersey State Police officer and must be retired. This is
because an officer's ability to perform all of the duties of his position and his

---

[3]*Equal Employment Opportunity Comm'n v. Wyoming*, 460 *U.S.* 226, 243,
103 *S.Ct.* 1054, 1064, 75 *L.Ed.*2d 18, 33 (1983).

[4]29 *U.S.C.A.* § 621 *et seq.*

"continued health and fitness of sworn New Jersey State Police officers [are] essential to the performance of the business of protecting the public." 631 *F.Supp.* 1514.

There is neither a statute nor a regulation that mandates the disability retirement of members of the State Police who have undergone coronary by-pass surgery. Consequently, we are not called upon to determine whether the study which was undertaken to justify a statute mandating retirement at 55 would suffice to sustain a statute or regulation requiring the retirement of State Troopers younger than 55 who have undergone such surgery. In the absence of such a statute or regulation, whether or not Sergeant Crain can be compelled to retire for disability before he reaches the age of 55 depends solely on a determination whether he is "mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the Division of State Police which the Superintendent ... is willing to assign to him...." *N.J.S.A.* 53:5A–9a.

In *In re Carberry*, 114 *N.J.* 574, 583, 556 *A.*2d 314 (1989), the Court held that a State Trooper with more than five years of continuous service "possessed a protectable interest in his continued employment with the Division" of State Police, and that that interest could be "described as both a property interest ... and as a liberty interest." *Id.* at 583–584, 556 *A.*2d 314 (citing *Board of Regents v. Roth*, 408 *U.S.* 564, 577, 92 *S.Ct.* 2701, 2709, 33 *L.Ed.*2d 548, 561 (1972); *Capua v. City of Plainfield*, 643 *F.Supp.* 1507, 1520–1521 (D.N.J.1986); *Greensberg v. Kimmelman*, 99 *N.J.* 552, 570–571, 494 *A.*2d 294 (1985); *Battaglia v. Union County Welfare Bd.*, 88 *N.J.* 48, 56, 438 *A.*2d 530 (1981), *cert. denied*, 456 *U.S.* 965, 102 *S.Ct.* 2045, 72 *L.Ed.*2d 490 (1982)).

In *Cunningham v. Dep't of Civil Serv.*, 69 *N.J.* 13, 23, 350 *A.*2d 58 (1975), a case in which civil service employees claimed they were entitled to appointment to certain classified positions, the Court held that there were two prerequisites to an evidentiary hearing in an administrative proceeding. The first prereq-

uisite is the existence of "[c]ontested factual issues which may be presented in an evidential manner in proceedings which are targeted at a person"; the second is that "the party affected by the administrative action have a safe-guarded interest. Particularized property rights or other special interests must exist." *Id.* at 23–24, 350 *A.*2d 58; *cf. McFeely v. Board of Pension Comm'rs,* 1 *N.J.* 212, 216, 62 *A.*2d 686 (1948) (holding that statutorily granted police pension funds became a property right entitling pensioner to hearing before his claim could be denied).

In *Carberry,* the existence of these prerequisites was obvious. 114 *N.J.* at 583–584, 556 *A.*2d 314. The Court and the parties simply assumed that the matter had to proceed as a contested case; the dispute was about the right of the Superintendent as the head of the Division of State Police to conduct the hearing. *Id.* at 577, 556 *A.*2d 314. The present case, like *Carberry,* concerns a tenured [5] State Trooper's right to retain his position. If its determination requires deciding contested factual matters on the basis of evidence, it too should have been treated in accordance with the procedures established by the Administrative Procedure Act for a contested case. *See N.J. S.A.* 52:14B–2(b) (defining "contested case" as "a proceeding ... in which the legal rights ... privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing...."); *N.J.A.C.* 1:1–4.1(a) (requiring that "[a]fter an agency proceeding has commenced, the agency head shall promptly determine whether the matter is a contested case"); *High Horizons Dev. Co. v. New Jersey Dep't of Transp.,* 231 *N.J.Super.* 399, 404–407, 555 *A.*2d 740 (App.Div.1989); *Hills Dev. v. Bernards*

---

[5] "... any member of the Division of State Police who has or shall hereafter serve continuously as such member for a period of five years shall thereafter continue in such membership during good behavor." *N.J.S.A.* 53:1–8.1.

*Township.,* 229 *N.J.Super.* 318, 339–341, 551 *A.*2d 547 (App. Div.1988); *Frank v. Ivy Club,* 228 *N.J.Super.* 40, 55–61, 548 *A.*2d 1142 (App.Div.1988), *rev'd on other grounds,* 120 *N.J.* 73, 576 *A.*2d 241 (1990). In a contested case, "Opportunity shall be afforded all parties to respond, appear and present evidence and arguments on all issues involved." *N.J.S.A.* 52:14B–9(c). All hearings in a contested case must be conducted before an administrative law judge. *N.J.S.A.* 52:14B–10(c).

The Deputy Attorney General advising the Board of Trustees recognized these principles but concluded that an evidentiary hearing was unnecessary because Sergeant Crain admitted having undergone coronary by-pass surgery. The conclusion that this admission obviated an evidentiary hearing assumed that Sergeant Crain's surgical operation was the only fact material to his involuntary retirement. If medical science has established, without substantial dissent, that coronary by-pass surgery is invariably disabling for someone called upon to perform the duties which could reasonably be assigned to an active member of the State Police, that assumption would be correct. In that event, the medical board and the Board of Trustees could properly reach their decision without proceeding as in a contested case. But in order to enable us to perform our function of judicial review, the Board of Trustees must state "the precise factual basis upon which the result has been reached. A court upon judicial review should not be forced to speculate as to the rational basis of the conclusion." *Cunningham,* 69 *N.J.* at 26, 350 *A.*2d 58; *see In re Howard Savings Inst.,* 32 *N.J.* 29, 52, 159 *A.*2d 113 (1960); *In re Bloomingdale Convalescent Center,* 233 *N.J.Super.* 46, 52–53, 55–56, 558 *A.*2d 19 (App.Div.1989). If the Board of Trustees adheres to its determination that Sergeant Crain's medical history is a sufficient basis for retiring him, the Board of Trustees should particularize the medical and factual foundation of its decision.

As we have pointed out, the statutory test for disability retirement is whether the prospective retiree is "incapacitated for the performance of his usual duty *and of any other*

*available duty in the Division of State Police which the Superintendent ... is willing to assign to him ....*" *N.J. S.A.* 53:5A–9a. (Emphasis added.) Sergeant Crain argues that the strenuousness of the duties to which members of the State Police are assigned varies with rank and that State Troopers' physical capacities diminish with age, even in the absence of heart disease. He therefore disputes the contention of the Division of Pensions that every State Trooper must be capable of performing every duty. He contends that even if his capacity is impaired, there are some regular duty assignments that he could readily perform and that the Superintendent should be willing to assign to him. We agree that the quoted statute may not be interpreted to give the Superintendent entirely arbitrary discretion. Even if the undisputed fact that Sergeant Crain underwent coronary by-pass surgery is itself sufficient to establish the extent of his disability, a hearing is necessary so that the Board of Trustees can determine whether there are assignments that he is capable of performing which could reasonably be made available to him.

If medical knowledge does not support the conclusion that coronary by-pass surgery is an invariable disqualification from all reasonably available assignments, whether Sergeant Crain can be retired for disability depends upon his medical condition and prognosis. The record which has been submitted to us does not contain a medical opinion based on a recent examination which supports the conclusion that he is totally disabled from performing the duties of a State Trooper. Presumably the additional tests recommended by Dr. Squires will be needed. If the Board of Trustees intends to rely on a new medical opinion based on further tests, the opinion and the underlying data should be furnished to Sergeant Crain. If he obtains a medical opinion favorable to his position based upon a current examination, he should submit it to the Board of Trustees who should, of course, submit it to the medical board. If these opinions indicate that there is no genuine dispute about whether he is disabled within the meaning of *N.J.S.A.* 53:5A–9a, the

Board of Trustees may make the decision without a contested hearing. If there is a genuine dispute either about the extent of his disability or about whether the Superintendent of State Police could reasonably assign him duties within his capacity, the matter should be transferred to the Office of Administrative Law to proceed as a contested case.

The decision appealed from is reversed and the matter is remanded to the Board of Trustees of the State Police Retirement Pension System for further proceedings not inconsistent with this opinion.