

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-1999

# Motley v New Jersey State Police

Precedential or Non-Precedential:

Docket 97-5715

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Motley v New Jersey State Police" (1999). *1999 Decisions.* Paper 295.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/295

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 1, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5715

DANIEL C. MOTLEY,

      Appellant

v.

NEW JERSEY STATE POLICE;
THE STATE TROOPERS FRATERNAL
ASSOCIATION OF NEW JERSEY

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. No. 96-cv-00419)
District Judge: Dickinson R. Debevoise

ARGUED August 3, 1998

BEFORE: NYGAARD, ALITO, and RENDELL,
Circuit Judges.

(Filed November 1, 1999)

      William Strazza, Esq. (Argued)
      Union Professional Building, Suite 9
      971 Stuyvesant Avenue
      P.O. Box 3806
      Union, NJ 07083
       Attorney for Appellant

Joseph L. Yannotti, Esq. (Argued)
CN 112
Office of Attorney General
 of New Jersey
Richard J. Hughes Justice Complex
Trenton, NJ 08625

Leon B. Savetsky, Esq.
Loccke & Correia
24 Salem Street
Hackensack, NJ 07601
 Attorneys for Appellee

Robert J. Gregory, Esq.
Room 7032
Equal Employment Opportunity
 Commission
1801 L Street, N.W.
Washington, DC 20507
 Attorney for Amicus-Appellant

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Plaintiff Daniel C. Motley, a former New Jersey State Trooper, was seriously injured on the job. Although he continued working as a Detective for several years after the accident, Motley was denied promotions because he was unable to complete the required annual physical examination. Eventually, Motley voluntarily took an accidental disability retirement, which included enhanced pension benefits. Thereafter, Motley sued the New Jersey State Police and others who are not parties to this appeal, alleging that by refusing to promote him for failing to pass the physical exam, the State Police discriminated against him on the basis of a physical handicap in violation of the Americans with Disabilities Act, 42 U.S.C. S 12101 et seq. ("ADA"), and the New Jersey Law Against Discrimination, N.J. Stat. Ann. S 10:5-1 et seq. ("NJLAD"). The District Court granted summary judgment to the State Police, ruling that Motley's prior admission of permanent and total

2

disability during the disability application process judicially estopped him from asserting that he was qualified for the job he sought. We will affirm, not because he was estopped, but because Motley was simply not entitled to survive summary judgment in light of his prior assertions of total disability, and his failure to adequately reconcile his wholly inconsistent positions.

I.

The facts of this case are undisputed, unless otherwise noted. This case arises as a result of an incident in January 1990 in which Motley was seriously injured while on duty. In the course of a drug buy-bust operation, Motley sustained serious injuries to his knees, back, neck, shoulder, and left eye when the accused attempted to escape and dragged Motley approximately 150 feet with his car until crashing into a pole.

Motley had joined the police force in 1982, and was promoted to Detective II in 1989. Since 1988, the New Jersey State Police has required that its officers participate in an annual physical examination.[1] The rules provided that any officer who did not satisfactorily complete the physical examination would not be eligible for promotion.[2] As a result of the injuries sustained in the January 1990 incident, Motley was placed on temporary limited duty status.

_____

1. The State Police justified this exam by noting that officers could be exposed to violent confrontations at any time, and that it was therefore necessary that the officers be physically able to respond to these situations to protect members of the public. This examination consisted of various physical activities. In addition to flexibility and body composition assessments, the officers were required to run 1.5 miles in 13 minutes, do 34 sit-ups in two minutes, and do 32 push-ups in two minutes. If an employee was unable to run, swimming or biking tests could be substituted.

2. The rules did not automatically exclude those officers who were suffering from temporary medical or physiological problems from consideration for promotion. Instead, the Police Superintendent considered their eligibility for promotion on a case-by-case basis.

Motley did not participate in the annual physical examination after he was injured in the 1990 incident. Between May 1990 and May 1991, Motley's performance was evaluated and he was not recommended for promotion to the rank of Detective I because he did not pass the fitness test. In August 1991, Motley filed a grievance claiming that he was entitled to the promotion because he had the requisite service time. Motley received no answer to his grievance, and he was subsequently not recommended for promotion in 1992 and 1993.

On April 7, 1993, Motley applied for an accidental disability pension. New Jersey law allows this benefit to be granted to a State Police officer provided that a medical board determines that the officer is "permanently and totally disabled . . . and . . . physically incapacitated for the performance of his usual duties" as a consequence of an event that occurred as a result of the officer's duties. N.J. Stat. Ann. S 53:5A-10(a). In his application, Motley declared that he was qualified for the enhanced disability pension benefits because he was "permanently and totally incapacitated" as a result of the January 1990 incident. The medical board concurred and found that Motley was permanently and totally incapacitated for "State Police Officer duties." The State Police did not challenge this determination. Thereafter, Motley's application for an accidental disability retirement pension was granted by the Division of Pensions, and Motley continues to receive monthly disability payments.

Motley commenced this action under the ADA and NJLAD. The District Court granted summary judgment to the State Police, ruling that Motley's prior assertion that he was totally and permanently disabled judicially estopped him from suing under the ADA and NJLAD because he could not demonstrate that he was otherwise qualified for the job.

II.

We have the opportunity in this case to address the effect of our prior holding in McNemar, 91 F.3d at 610. As we have previously noted, McNemar has generated a great deal

4

of academic and judicial criticism. See Krouse v. American Sterilizer Co., 126 F.3d 494, 502 n.3 (3d Cir. 1997) (citing the criticism). Much of the criticism is based on the mistaken belief that McNemar announced a per se rule that a claim for disability, based on an assertion of a total disability or inability to work, necessarily bars an individual from pursuing an ADA discrimination claim. McNemar announced no such per se rule.3

McNemar correctly declared that application of judicial estoppel requires that " `each case be decided upon its own particular facts and circumstances.' " McNemar, 91 F.3d at 617 (quoting Scarano v. Central R.R. Co., 203 F.2d 510, 513 (3d Cir. 1953)). We stated that the application should not be formulaic, but should follow the framework set out in our decisions, most notably in Ryan Operations G.P. v. Santiam–Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996). Looking at the framework developed by this court over time, we opined in McNemar that judicial estoppel may be invoked by a court at its discretion "to preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts in assuming inconsistent positions, and . . . with a recognition that each case must be decided upon its own particular facts and circumstances." McNemar, 91 F.3d at 617 (emphasis added).

We made clear in Krouse that "courts should carefully adhere to the two–part test of Ryan Operations" before applying judicial estoppel. Krouse, 126 F.3d at 503 n.5. The Ryan Operations analysis requires a district court to make a determination on two threshold questions before applying

_____

3. We previously noted this in dicta in Krouse. In Krouse, we stated that the district courts in this circuit "should not assume that McNemar always bars an individual's ADA claims merely because prior representations or determinations of disability exist on the record." Krouse, 126 F.3d at 503 n.5. The Eleventh Circuit Court of Appeals also took notice of the explanatory effect of the Krouse opinion when it stated that in light of Krouse's discussion of McNemar, "it appears that no court of appeals has adopted the position that a plaintiff who has claimed total disability on a benefits application is per se estopped from claiming he could work with reasonable accommodations under the ADA." Talavera v. School Bd. of Palm Beach County, 129 F.3d 1214, 1218 (11th Cir. 1997).

5

judicial estoppel. The questions are: (1) is the present position inconsistent with a position formerly asserted; and (2) if so, were either or both of the inconsistent positions asserted in bad faith with the intent to play "fast and loose with the court." Ryan Operations, 81 F.3d at 361; see also McNemar, 91 F.3d at 618. The District Court adhered to this framework when it analyzed the issues in this case. Following Krouse, the Supreme Court in Cleveland v. Policy Management Sys. Corp., 119 S. Ct. 1597 (1999), explained how cases of this type should be handled, and it is that framework that we apply here.

A.

The first question we must address is whether the two positions taken by Motley are inconsistent. As the Supreme Court's recent decision in Cleveland makes clear, each case should be decided on its unique facts.

In Cleveland, the Supreme Court decided that the Fifth Circuit Court of Appeals erred when it held that receipt of Social Security Disability Insurance ("SSDI") benefits automatically created a rebuttable presumption that the recipient was estopped from pursuing an ADA claim. See id. at 1599-1600. The Court held that while no presumption should be applied, to survive summary judgment, an ADA plaintiff "cannot simply ignore her SSDI contention that she was too disabled to work. . . . [S]he must explain why that SSDI contention is consistent with her ADA claim that she could `perform the essential functions' of her previous job, at least with `reasonable accommodation.' " Id. at 1600.

The Supreme Court acknowledged, as do we, that a statement of total disability when applying for disability benefits may be a "context-related legal conclusion, namely `I am disabled for purposes of the [disability act].' " Id. at 1601. The Court noted that there are situations in which a person may be disabled enough to qualify for receipt of disability benefits under SSDI, yet still be able to bring a cognizable ADA claim.[4] In large part, this is because, when

_____

4. To the extent that McNemar is unclear on this issue, we clarify today that, consistent with Cleveland and the rule that every case should be decided on its individual facts, there may be circumstances in which a party may pursue a successful ADA claim even after he has applied for disability benefits.

determining whether to award SSDI benefits, the possibility of reasonable accommodation is not taken into account. Under the ADA, however, a "qualified individual" includes all people who "can perform the essential functions" of the job "with or without reasonable accommodation." 42 U.S.C. S 12111(8).

The Court also acknowledged that certain statements made during disability hearings may lead to generally applicable factual conclusions. Where factual inconsistencies between claims exist, as opposed to context-specific legal conclusions, the Court held that the law remains "where [it] found it." See Cleveland, 119 S. Ct. at 1601-02; Mitchell v. Washingtonville Central School Dist., 190 F.3d 1, No. 98-7185, 1999 WL 627019, at *5-6 (2d Cir. Aug. 18, 1999) (publication page reference not available) (discussing Cleveland and holding that previous assertions made as part of disability claim that employee could not stand or walk were purely factual, so that "if the requirements for judicial estoppel are otherwise met, [the employee] may be prevented from claiming, as a factual matter, that he could [perform these physical activities] on the basis of prior factual assertions to the contrary.").

The Supreme Court recognized that, although no presumption against recovery in an ADA suit exists, "[n]onetheless, in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim." Cleveland, 119 S. Ct. at 1603. Recognizing the apparent contradiction that arises from an earlier application for disability benefits, the Court noted that the ADA plaintiff "must proffer a sufficient explanation" to resolve the contradiction. Id.

In Cleveland, the ADA plaintiff had proffered a sufficient explanation of the difference in her statements. First, Cleveland noted that her initial statements were"made in a forum that does not consider the effect that reasonable workplace accommodations would have on the ability to work." Id. at 1604. Obviously, this is true in all of these cases and, if this argument alone allowed ADA plaintiffs who had previously applied for SSDI-type benefits to survive summary judgment, summary judgment could never be granted. Because the Supreme Court indicated

7

that summary judgment would indeed be appropriate in some cases, an ADA plaintiff must, in certain circumstances, provide some additional rationale to explain the plaintiff's apparent about-face concerning the extent of the injuries. Considering the different contexts in which the two statutory regimes operate could, of course, be crucial to understanding how an ADA plaintiff's particular claims may be reconciled. The additional justification presented by the plaintiff could, in theory, go into detail regarding the facts of his or her case, demonstrating how the differing statutory contexts makes their statements made under one scheme reconcilable with their claims under the other. As discussed below, however, such consideration does not help Motley.

In Cleveland, the ADA plaintiff claimed that her statements were accurate "in the time period in which they were made." Id. So, in addition to noting that the statutory standards differed, Cleveland appears to have made a fact-based argument that her condition changed to some degree during the applicable time periods. This amounted to a sufficient explanation under the facts of Cleveland's case but, as we have said, each case must be decided on its unique facts. Although the presence of this additional justification distinguishes Cleveland's case from Motley's, this does not mean that Motley must demonstrate a change in his condition to avoid dismissal of his case. It does mean, however, that to avoid having his claim dismissed Motley's "explanation [of inconsistent positions] must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of or [his] good faith belief in the earlier statement, [he] could nonetheless perform the essential functions of [his] job, with or without reasonable accommodation." Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure S 2732.3 (West Supp. 1999) (discussing Cleveland). Motley has failed to provide such a sufficient explanation, even taking into account the different standards used in his disability hearing and under the ADA.

To establish that he was a "qualified individual with a disability" under the ADA and the comparable provisions of the NJLAD,5 Motley must be able to demonstrate that he

_____

5. Although an ADA suit revolves around whether the plaintiff has a "disability," 42 U.S.C. S 12102(2)(A), the NJLAD refers to "handicapped"

8

could perform the "essential functions" of a state trooper
with or without reasonable accommodation. See  42 U.S.C.
S 12111(8); Gaul v. Lucent Techs., Inc., 134 F.3d 576, 579
(3d Cir. 1998). Therefore, it was the District Court's duty to
decide whether Motley's earlier assertions when applying
for disability benefits were inconsistent with this burden.
After examining the specific facts of the case, the District
Court found that Motley's present claim that he was able to
perform the essential functions of his position with or
without accommodation was "fundamentally inconsistent"
with his earlier declaration that he was permanently and
totally disabled and unable to work as a state police officer.

Although courts should not assume that an individual's
ADA claim is barred "merely because prior representations
or disability exist on the record," Krouse, 126 F.3d at 503
n.5, the attainment of disability benefits is certainly some
evidence of an assertion that would be inconsistent with
the argument that the party is a qualified individual under
the ADA. Recognizing that this was the logical conclusion in
these types of cases, the Supreme Court in Cleveland
acknowledged that the ADA plaintiff must somehow explain
the apparent inconsistency. Motley has failed to meet this
burden.

In his application for disability benefits, Motley averred
that he was "permanently and totally disabled" as a result
of the events of January 1990. (SA 11, SA 13) It is difficult
to get around the conclusion that, in at least one of the
fora, Motley was not completely honest. The statutes under
which Motley pursued his disability benefits claim allow a
disability pension to be awarded to an officer who is
"physically incapacitated for the performance of his usual

_____

individuals. N.J.S.A. S 10:5-5(q). We have noted that the definitions of
the two terms are different, most notably because the NJLAD definition
of handicapped does not include the ADA's requirement that the
condition substantially limit a major life activity. See Failla v. City of
Passaic, 146 F.3d 149, 153-54 (3d Cir. 1998). We will concentrate on the
ADA standard in our analysis because it is clear that if Motley's
statements estopped him from claiming that he had a"disability"under
the more stringent ADA standard, the statements would also estop him
from claiming he was "handicapped" under the NJLAD.

9

duties in the Division of State Police." N.J. Stat. Ann. S 53:5A-10(a). Nowhere in his application for the disability pension is there any indication that Motley could perform the essential functions of a state trooper, with or without accommodation. "Employers . . . are not required to find another job for an employee who is not qualified for the job he or she was doing." School Bd. of Nassau County v. Arline, 480 U.S. 273, 289 n.19, 107 S. Ct. 1123 (1987). However, Motley did receive full pension benefits.

Rather than a general allegation of disability, Motley offered detailed descriptions of his injuries and their impact on his ability to work. He claimed that he had sustained several debilitating injuries to support his claim of physical incapacitation in his application for disability benefits. He stated that he had "extremely painful and recurring headaches" and "intense back pain" when he sat for more than 20 minutes. (SA 15) In addition, Motley claimed that he had difficultly sleeping more than two to three hours because of the back pain. Furthermore, he asserted that he had "extreme pain" in his left knee and could not stand on it without pain. He also claimed to have "extreme difficulty with running." (SA 15) To receive the disability pension, Motley had to undergo an examination by a medical board. This board concurred with Motley's assertion that he was "totally and permanently incapacitated for state police officer duties." (SA15) Neither Motley nor the State Police contested this finding, which presumably took the fundamental job requirements for state police officers, along with reasonable accommodations such as light duty, into consideration when it chose to grant Motley full pension benefits.

More important than the extent of Motley's injuries is his failure to proffer a reasonable explanation for his inconsistent statements. As we noted above, simply averring that the statutory schemes differ is not enough to survive summary judgment in light of Cleveland. An ADA plaintiff must offer a more substantial explanation to explain the divergent positions taken, or else summary judgment could never be granted. Motley has failed to bring any additional reasons for his conflicting answers to our attention. If anything, looking to the different statutory

schemes in this particular case convinces us that Motley's claims are, in fact, unreconcilable. The purpose of Motley's disability hearing was to determine whether he could continue to function as a state police officer. The resulting conclusion that he should be granted full pension benefits because his medical condition did not allow him to continue to serve is not one taken from some foreign context; it is directly relevant to Motley's claim that he was discriminated against when the New Jersey State Police failed to promote him. If Motley could not continue to serve because of his medical condition, it follows that he should not have been promoted for the same reason. Nonetheless, under Cleveland, we have given Motley an opportunity to explain how he can reconcile his two assertions. We do not believe the District Court erred by finding there is not sufficient evidence to allow a reasonable juror to do so.

As noted above, to the extent that Motley now wishes to contest the purely factual findings regarding his physical condition, as opposed to conclusions that he was completely disabled for purposes of working as a state police officer, Cleveland does not even apply and Motley may be precluded from asserting such a claim. See Cleveland, 119 S. Ct. at 1601-02; Mitchell, 190 F.3d at ___, 1999 WL 627019, at *5-6.

Motley's decision to rely solely on the differences in the statutory schemes is thus fatal to his ADA and NJLAD claims under the circumstances. There is undeniably a difference in the language of the various statutes; however, as McNemar indicated, focus on the differences in the statutory standards should not take precedence over a careful assessment of the nature of the prior assertions made by a party and their impact on the current claim.

As the Supreme Court made clear in Cleveland, 119 S. Ct. at 1603-04, the mere fact that the statutory standards differ in some aspects does not mean that a prior assertion of permanent and total disability can never preclude a party from bringing a claim under the ADA. Cleveland holds simply that where context-related legal conclusions are involved, courts must not apply presumptions automatically without first considering whether the ADA plaintiff can reconcile the two apparently inconsistent

11

statutory claims. There may be cases where, looking at the previous facts and statements by a party, the assertions are such that the party cannot prove that he was a qualified individual because his previous statements take the position that he could not perform the essential functions of the job, with or without accommodation. That is the case here.

Motley, relying on several specific and severe physical injuries, asserted that he was "permanently and totally disabled." This was not a mere blanket statement of complete disability checked on a box in order to obtain pension benefits. Rather, the assertion was supported by Motley's additional statements concerning the type and extent of his injuries. Furthermore, the medical board diagnosis, uncontested by Motley, also concluded that Motley was permanently incapacitated for police officer duties. On their face, these assertions are patently inconsistent with his present claims that he was a "qualified individual" under the ADA.

Motley asserted that he was totally disabled so that he could receive special retirement benefits. After his retirement, he brought this claim, which necessarily relies on the fact that he was not totally disabled. Examining all the facts, we cannot say that the District Court erred when it concluded that the ADA case brought by Motley was inconsistent with his earlier statements regarding his disability. Thus, under Cleveland, the entry of summary judgment against Motley was proper. Our decision is based squarely on the standard set out by the Supreme Court in Cleveland. The difference between our position and that of the dissent is simply the fact-bound question of whether, under that standard, Motley was entitled to survive summary judgment. We hold that he was not.

III.

Because we find that the District Court did not err when it granted summary judgment against Motley in light of his prior assertions of complete disability, we affirm.

12

RENDELL, Circuit Judge, dissenting:

I agree with the majority's view that Cleveland v. Policy Management Sys. Corp., undercuts our previous decisions and replaces concepts of judicial estoppel and special legal presumptions with a straightforward test that is, in essence, nothing more than an application of normal summary judgment procedures when conflicting affidavits are presented in a case.1 Now, a plaintiff must reconcile or explain away the apparent conflict.

In Cleveland, the Supreme Court gave Ms. Cleveland an opportunity to do so, remanding so "[t]he parties [would] have the opportunity in the trial court to present, or to contest, these explanations, in sworn form where appropriate." Cleveland, 119 S. Ct. 1597, 1604 (1999).2 However, we have denied Mr. Motley his day in court based on our view that he would not be able to satisfactorily explain away the inconsistency between his two statements.

I take issue with our ruling for two reasons:

First, I think that, after Cleveland, we should remand in cases such as this to provide all plaintiffs in Mr. Motley's position with the opportunity to explain away the inconsistency, if they can do so, and to be subject to cross examination, rather than reaching our own conclusions from the record.3 The procedure set forth in Cleveland requires no less.

_____

1. In Cleveland, the Supreme Court explained:

     When faced with a plaintiff 's previous sworn statement asserting
     "total disability" or the like, the court should require an
explanation
     of any apparent inconsistency with the necessary elements of an
     ADA claim. To defeat summary judgment, that explanation must be
     sufficient to warrant a reasonable juror's concluding that,
assuming
     the truth of, or the plaintiff's good faith belief in, the earlier
     statement, the plaintiff could nonetheless "perform the essential
     functions" of her job, with or without "reasonable accommodations."

Cleveland, 119 S. Ct. at 1604.

2. Contrary to the majority's statement regarding the holding of Cleveland, the Supreme Court did not find her explanation "sufficient" to defeat a motion for summary judgment; rather, it remanded to test the sufficiency of the statement. See Cleveland , 119 S. Ct. at 1604.
3. In the post-Cleveland decision of Mitchell v. Washingtonville Central School Dist., ___ F.3d ___, No. 98-7185, 1999 WL 627019 (2d Cir. Aug.

Once the plaintiff has made an apparently inconsistent statement, the defendant challenges this contrary assertion as a defense, and in order to survive summary judgment, the plaintiff must come forward with an explanation. It is not for the court upon the defendant's raising of this inconsistency, to decide on its own whether the inconsistency can be reconciled. How can we, now, after Cleveland, deny this opportunity which is clearly mandated?

In Cleveland, the explanations offered in plaintiff 's brief on appeal consisted not only of statutory differences, but also included an allegation that plaintiff 's condition had improved over time so that the earlier statements were true when made. See id. Although this would seem to be a satisfactory explanation, the Supreme Court did not reverse outright, but, rather, remanded the case for determination as to the sufficiency of the explanation. See id. In doing so, it did no more than permit the normal procedure to unfold, that is, as it outlined in explaining the way these situations should be handled, plaintiff must be given the opportunity to explain away.

Here, we err not only in deciding the issue, but, even more, we err by deciding it based upon the record made when the rules of the game were very different. The District

_____

18, 1999) (to be reported at 190 F.3d 1), the Second Circuit came to its own conclusion regarding plaintiff 's ability to perform the essential functions of a position with or without a reasonable accommodation. The plaintiff had previously stated that he could not engage in any gainful employment and, specifically, could not stand or ambulate for any prolonged period. The court, finding that standing and walking were essential functions of the position in question, and holding that the principles of judicial estoppel applied to those factual assertions, affirmed the district court's conclusion that the plaintiff could not establish a prima facie case. Our case is clearly distinguishable from Mitchell's. Here, the District Court's determination that Motley was judicially estopped rested solely upon Motley's legal conclusions rather than his factual assertions. Furthermore, courts should not use the disability description normally set forth in an application for benefits, without more, as a bar unless the result is clear. To do similarly deprives
litigants any opportunity to explain.

14

Court decided this issue in the context of a body of law that did not permit any explanation of the inconsistency, and certainly did not require the proffer of an explanation. In McNemar v. Disney Store, Inc., this Court wrote:

901<!>"McNemar's statements on his disability benefits

application are unconditional assertions as to his disability; he should not now be permitted to qualify those statements where the application itself is unequivocal." McNemar v. Disney Store, Inc., 91 F.3d 610, 618 (3d Cir. 1996) (quoting Smith v. Midland Brake, Inc., 911 F. Supp. 1351, 1358 (D. Kan. 1995) (internal quotations omitted).4

The District Court never considered any explanation, and the parties' discovery and arguments were clearly uninformed as to the need for an explanation. To now cull the existing record to make the argument, and resolve it in favor of the defendant under a new set of rules, is unfair. See Rothberg v. Rosenbloom, 771 F.2d 818, 824 (3d Cir. 1985); see also U.S. v. Kikumura, 918 F.2d 1084, 1103 n.23 (3d Cir. 1990). I would therefore remand for plaintiff to proffer his explanation, with the opportunity for the parties

_____

4. I recognize that in Krouse v. American Sterilizer Co., 726 F.3d 494, 503
n.5 (3d 1997) we subsequently explained that McNemar ought not be read as a per se bar of ADA claims. However, McNemar's skepticism remained the law of this circuit until Cleveland  and the District Court relied upon McNemar in its description of the law and its analysis of this case. The District Court wrote:

> Mr. Motley's assertions of permanent and total disability and inability to work are fundamentally inconsistent with his current position that at all material times with or without accommodation he was able to perform the essential functions of his position. Counsel for Mr. Motley noted both in the papers submitted and at oral argument of September 8, 1997 that he never specifically claimed to be disabled in August 1991 when he was to be considered for a promotion. However, his declaration that he is totally and permanently disabled include the August 1991 time period. In addition, he certified that he has not performed regular duty since the traumatic event. Accordingly, because Mr. Motley has asserted fundamentally inconsistent positions, thefirst part of the test for judicial estoppel is met.

Motley v. New Jersey State Police, No. 96-419, slip op. at 9 (E.D. Pa. Sept. 9, 1997).

to offer evidence and cross-examine on this issue, as the Supreme Court did in Cleveland.5

Second, I read the record here as not being nearly as one-sided as the majority views it, and I believe that there are, at least, genuine issues of fact regarding what Mr. Motley can and cannot do, and issues as to how his statements should be interpreted. The majority notes some of the record regarding Mr. Motley's situation, but there is much more. I believe the majority places too much weight on the findings of the medical board, ignores the questions raised by Motley's second benefits application, and, most importantly, fails to consider the factual record regarding the extent of his service and duties, after his injury, for which he received commendations.

It is clear from his work reviews, as it is from his amended application for benefits, that Motley had indeed been working consistently as a detective ever since his injury. In fact, Motley did so in superior fashion. He remained on full-duty for the purposes of his reviews, see

_____

5. I note in passing that the majority opinion seems to equivocate somewhat with respect to the type of explanation that will suffice -- whether statutory differences can be, in and of themselves, enough. While we do not clearly state that they can be, I think that Cleveland does so state, and I will construe the majority opinion to so provide. See Cleveland, 119 S. Ct. at 1604 (stating that the plaintiff raised the difference between the statutes and the accuracy of her statements at the times they were made as explanations and remanding for consideration of "these explanations"). Obviously, however, a statutory difference does not exist in the abstract. Rather, reliance on different standards as an explanation must be supported with relevant facts -- for instance, if someone is disabled for purposes of a retirement disability pension because he cannot perform the "usual duties" that a superior would assign, he must explain how he could perform the "essential functions with accommodation," relating these differences to specific facts as to what he can and cannot do in connection with his employment, and how accommodation would make a difference in his job performance. As noted above, Cleveland states: "To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff 's good faith belief in, the earlier statement, the plaintiff could nonetheless `perform the essential functions' of her job, with or without `reasonable accommodations.' " Cleveland, 119 S. Ct. at 1604.

16

PA 42, and received exemplary performance evaluations
and several commendations. See PA 85–100. 6 Motley
participated in complex investigations requiring undercover
work, expert surveillance, and execution of search warrants
in potentially dangerous situations. See id. Unlike in
Mitchell v. Washingtonville Central School Dist., ___ F.3d ___,
No. 98–7185, 1999 WL 627019 (2d Cir. Aug. 18, 1999) (to

_____

6. For instance, from May 1, 1990 to October 31, 1990, Mr. Motley
"functioned in an undercover capacity, a surface investigation and as
part of a surveillance team operating in a primarily Hispanic
neighborhood," and was "injected into emergent investigations involving
lengthy and complicated affidavits for search warrants," which he
prepared and executed. See PA 87–88. From November 1, 1990 to April
30, 1991, Mr. Motley was assigned to the Narcotics North Unit and the
Patrol Response Unit, in both an undercover and surface investigative
capacity. He received a commendation for his work with the Patrol
Response Unit during this time period, for his participation in the
seizure of $4.5 million. See PA 89. From May 1, 1991 to April 30, 1994,
he was assigned to the newly created C.E.R.B. North Unit, Squad 2,
where he investigated "diverse criminal cases," such as narcotics,
loansharking, and racketeering, in both undercover and surface
investigative capacities. See PA 91. During this time period, he received
a Performance Notice commending him for his actions when he was
confronted while working undercover by five subjects, two of them
armed. See PA 94. He also received commendations for his participation
in the installation of an electronic surveillance device, the arrest of
members of a Jamaican Posse, and a joint investigation resulting in a
major cocaine seizure. See PA 94, 96–97, 99.

Further, Mr. Motley's performance evaluations during the time period
after he was injured were consistently positive. For instance, the
evaluation report covering the time period from November 1, 1989 to
April 1, 1990, concluded that Mr. Motley "perform[ed] his duties in an
excellent and professional manner." PA 85. It also noted that "[h]e
willingly accepts responsibilities and maintains a strong desire to
produce a quality work product," and "exceeds in enthusiasm, has good
initiative, is aggressive, professional and maintains an excellent spirit
of
cooperation with his peers and other law enforcement agencies
concerned with narcotic enforcement." Id. Mr. Motley was also described
in various evaluation reports spanning the time period from November 1,
1989 to April 30, 1994, as "very proficient," "very resourceful,"
"thoroughly knowledgeable," "a valuable asset," "a positive role model,"
"conscientious," "self-motivated," "perform[ing] well under stressful
situations," and "display[ing] a high degree of competence." PA 86–87,
90, 92, 94–95.

17

be reported at 190 F.3d 1), the record does not support the conclusion that Motley's injuries necessarily prevented him from fulfilling the essential functions of a police officer with or without an accommodation. Reading the facts in the record in the light most favorable to Motley, as we must, the record suggests the opposite.

The majority explains that his applications for benefits were bereft of any indication that he could perform the essential functions of his job, and were more than a blanket statement of "total disability" because they were supported by a description of his injuries. This is misleading. His amended application, admittedlyfiled after his original application was approved,7  clearly states: "Since the event, I have been on light duty." See  SA 12. Furthermore, the majority does not consider that the benefit application asks for a description of his injuries, which he gave, noting that the experiences caused pain. Lastly, the majority misreads the findings of the medical board.8

_____

7. Motley first filed for benefits in April 1993. By letter dated February 3,
1994, he was informed that his application was approved. In his first application, Motley answered "No" to the question: "Have you performed regular duty since the traumatic event?" See  SA 14. In his amended application, filed on March 15, 1994, six weeks after his original application was granted and six weeks before hefirst received benefits, Motley answered the same question by writing that he had "been on light duty" since the event. See SA 12. In his reply brief, the Appellant states that the new application was filed because Motley realized the first application was not completely accurate. Appellee's brief does not discuss the amended application.

8. The majority asserts: "Neither Motley nor the State Police contested [the medical board's] finding which presumably took the fundamental job requirements for state police officers, along with reasonable accommodations such as light duty, into consideration when it chose to grant Motley full pension benefits." This presumption is unfounded, and the majority provides no authority for its conclusion. The conclusion is tantamount to determining that no statutory explanation is possible in this case.

Furthermore, comparison between N.J. Stat. Ann. 53:5A-10(a) -- applicable here -- and 53:5A-9(a) suggests that the majority's broad reading of the medical board's findings is not supportable. Section

18

It is worth remembering that Motley did not retire from the police department solely because his pain made working difficult. He retired after he became frustrated with the police force's refusal to consider him for promotion to Detective I. Due to the medical status he was assigned, Motley was not permitted to take the police force's physical exam. He therefore effectively became ineligible for promotion although he worked at such a high level and received glowing reviews, and even though police internal operating procedures held open the possibility that the eligibility of temporarily disabled individuals would be considered by the Superintendent on a case-by-case basis. See S.O.P. C-20(H)(2)(a). Motley did not suffer his frustration in silence. He filed a grievance in August 1991 complaining of his denial of promotion because of the physical exam, and submitted a request for a case-by-case determination by the Superintendent in November 1993 before resigning effective May 1994.

Accordingly, I would remand to the District Court for reconsideration of the grant of summary judgment in light of Cleveland.

_____

53:5A-9(a), which deals with general disabilities rather than those arising from an event occurring during performance of police duties, requires that the: "medical board ... certify that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the Division of State Police which the Superintendent of State Police is willing to assign him." N.J. Stat. Ann. S 53:5A-9(a) (West 1999) (emphasis added). This additional phrase, "of any other available duty", not contained in 53:5A-10(a), may be important to our understanding of 53:5A-10)(a). The New Jersey Superior Court has interpreted 53:5A-9(a) to require the determination of whether there are assignments that the plaintiff could perform which "could reasonably made available to him," Crain v. State of New Jersey, 584 A.2d 863, 868 (N.J. Super. Ct. 1991), before requiring benefits under that section, and an Administrative Law Judge has suggested that the reasonable accommodation standard of the ADA provided the best analogy to the standard announced in Crain. See Ward v. Board of Trustees of the Police and Fireman Retirement Sys., 1999 WL 160596 (N.J. Admin. Feb. 10, 1999) (publication page reference not available). The section that applies here has no corresponding language, and should not be read to support the presumption that accommodation entered into the medical board's thinking, let alone its finding.

19

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

20