706 A.2d 1123

NAPORANO ASSOCIATES, L.P., PLAINTIFF/RESPONDENT, v. B & P BUILDERS, DEFENDANT/APPELLANT, v. JEFFREY M. BEIDES AND KORONA BEIDES, EATON, MARK & SANTIAGO, P.A., THIRD PARTY DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued January 27, 1998—Decided March 5, 1998.

Before Judges PRESSLER, WALLACE and CARCHMAN.

*David M. Hutt*, argued the cause for appellant (*Hutt & Berkow*, attorneys; *Mr.Hutt*, on the brief).

*Jeffrey M. Beides*, argued the cause for respondent (*Korona, Beides, Eaton, Mark & Santiago*, attorneys; *Mr. Beides*, on the brief).

The opinion of the court was delivered by

WALLACE, J.A.D.

This appeal involves the application of a liquidated damages clause in a contract for the sale of real estate. The Law Division judge granted summary judgment in favor of plaintiff, Naporano Associates, L.P., concluding that defendant, B & P Builders, breached the contract. In a separate hearing on damages, the judge concluded that plaintiff was not limited to the liquidated damages provision in the contract and granted plaintiff compensatory damages. Defendant appeals. We reverse.

Plaintiff was the owner of the premises known as 1017 St. Georges Avenue in Colonia (the premises). On January 23, 1996, defendant entered into a contract of sale to purchase the premises from plaintiff for the sum of $130,000 and paid a deposit of $100. In March 1996, the parties entered into an addendum to the contract reducing the purchase price to $128,000 and requiring an additional deposit of $12,800. The addendum provided in part:

> In the event that the closing does not take place on or before May 1, 1996 through no fault of Seller, Buyer shall be deemed to be in default under the terms of the within Contract and *the deposit shall automatically and without notice be paid over to Seller as liquidated damages.*
>
> (Emphasis added).

Defendant was also given the right to extend the closing date for two additional months by paying a non-refundable extension fee of

$2,000 for each additional month. Defendant paid plaintiff $12,800 for the additional deposit and on May 1, 1996, defendant paid plaintiff $2,000 to extend the closing date until June 1, 1996.

According to Ralph Mocci, an officer of defendant, he had discovered that the New Jersey Department of Transportation (NJDOT) contemplated condemnation proceedings for a portion of the premises. As a result, defendant did not wish to have closing on the contract until the condemnation issue was resolved.

On June 4, 1996, plaintiff's attorney wrote to defendant's attorney, informing him that defendant had defaulted under the terms of the contract by failing to close by May 31, 1996, or to pay the $2,000 extension fee. The letter also stated that the contract was terminated and that he was releasing the $12,800 deposit he held in escrow to the plaintiff.

Defendant's attorney replied by letter that NJDOT had informed his client that the property was the subject of a condemnation proceeding, that NJDOT had given notice of such to plaintiff, and that a hearing had been scheduled for June 10, 1996, at which NJDOT would meet with the officials in Woodbridge and the public to discuss the condemnation proceedings. The letter also stated that defendant agreed to provide the $2,000 extension fee to his office [1] to be held in trust pending ultimate resolution of the condemnation proceedings.

Plaintiff's counsel replied by letter dated June 6, 1996, that his client had never received notice from NJDOT of the condemnation proceedings or the meeting. Counsel further stated that plaintiff would not accept the $2,000 extension fee and that defendant's failure to meet the May 31 deadline for the extension was a default, entitling plaintiff to retain the deposit as liquidated damages.

---

[1] The letter was unclear on whether defendant intended that its attorney hold the extension fee in trust or whether plaintiff's attorney would hold the funds.

Defendant's attorney replied the next day and enclosed a copy of the notification that his client had received from NJDOT about the improvements to the road in front of the premises. He also noted that defendant had been informed that NJDOT plans had been sent to plaintiffs at P.O. Box 5158, Newark, New Jersey. He requested that plaintiff's counsel contact him to discuss the matter.

Plaintiff's attorney responded by letter on June 13, 1996, that "unless plaintiff receives the $2,000 extension fee by June 14, 1996 it would insist upon immediate release of the $12,800 deposit." Plaintiff also agreed to apply the forfeited deposit towards the purchase price if the $2,000 was received by June 14, 1996, and closing of title occurred before July 1, 1996.

Apparently, defendant did not reply to the June 13, 1996 letter. Plaintiff then relisted the property for sale and reduced the asking price. On October 24, 1996, plaintiff entered into a contract of sale with a new buyer, Rabia Awan, for the purchase price of $85,000. The closing was scheduled for December 1996.

By letter dated December 2, 1996, defendant's attorney wrote to plaintiff's counsel that his client had discussed the improvement plans with NJDOT and that defendant wanted "to close title on or before April 1, 1996 [2] at the purchase price of $128,000."

Following a telephone conversation on December 9, 1996, between counsel, defendant's counsel faxed a letter to plaintiff's counsel and to the new buyer's counsel explaining that defendant objected to the sale and that Awan should inform his title company that defendant claimed an equitable lien on the premises. As a result, Awan refused to complete the closing with plaintiff until the contract dispute was resolved.

Plaintiff filed a four count declaratory judgment complaint dated December 17, 1996. In the first count, plaintiff sought a

---

[2] The date of April 1, 1996 is a mistake. We assume that the date was intended to read April 1, 1997.

declaration that the contract between plaintiff and defendant had been terminated by defendant's failure to meet the deadline and that plaintiff was entitled to retain the $12,800 deposit as well as the $2,000 extension fee. In the remaining counts, plaintiff sought a judgment that defendant had no interest in the premises, that defendant's actions constituted an intentional interference with the contract between plaintiff and Awan, and that defendant's actions constituted a slander of title. Plaintiff also sought compensatory and punitive damages.

Plaintiff filed and obtained an Order to Show Cause on January 21, 1997, seeking a determination that the contractual rights of defendant had been terminated. Following a hearing on February 27, 1997, the judge denied plaintiff's request and ordered the parties to complete discovery within thirty days, after which he would entertain motions for summary judgment.

Defendant undertook no discovery. Plaintiff filed a motion for summary judgment returnable April 18, 1997. In support of that motion, plaintiff relied on the certifications of John Naporano, Ketan Shah, and Lynn Middleton.

John Naporano, Vice President of Nap Realty Corp., plaintiff's General Partner, certified that plaintiff received no notification from NJDOT concerning the contemplated condemnation of the premises until December 23, 1996. He claimed that plaintiff was unaware of the possible condemnation until defendant advised his attorney of it. Further, Naporano set forth the sequence of events concerning the contract with defendant and claimed that neither defendant nor its attorney responded to plaintiff's offer in the letter dated June 13, 1996, to extend the closing date to July 1, 1996, provided plaintiff received a $2,000 extension fee by June 14, 1996. Further, he certified that the highest offer plaintiff received subsequent to the default by defendant was Awan's $85,000 offer. In the concluding paragraph, Naporano claimed losses totaling $6,728.21 as reflected on the schedule of losses attached to his certification.

Shah certified, in part, that he was the listing agent for the premises and that pursuant to the request of John Naporano, he contacted Barbara J. Sancilaro, a real estate agent and the daughter of Ralph Mocci, a principal of defendant, and offered to sell the property to defendant for $99,000. He claimed this occurred in early October 1996 and that Sancilaro had advised him defendant rejected the offer and was no longer interested in the property.

Middleton certified she is employed by NJDOT and that it was contemplated that a widening of Route 35 would necessitate the acquisition of between ten and fifteen feet from the frontage of the premises. She asserted that no official notice of the proposed acquisition had been provided, but NJDOT had conducted a public information forum and had responded to inquiries concerning the proposed plans. Further, she claimed that NJDOT's proposed plans originally showed one owner of the premises and the property located to the rear of the subject premises, but that NJDOT was notified that the front portion of the property was sold to plaintiff and that NJDOT's plans would be changed to reflect this change in ownership.

Plaintiff argued in its brief in support of its motion for summary judgment that defendant had breached the contract, thereby entitling plaintiff to retain the deposit as liquidated damages. Defendant filed a brief in opposition to plaintiff's motion for summary judgment and submitted the certifications of Ralph Mocci and Barbara Sancilaro.[3]

Mocci, an officer of plaintiff, acknowledged that he had signed the contract and addendum on behalf of defendant and that defendant had paid a total deposit of $12,900 and an extension fee of $2,000. He was advised by NJDOT that the subject premises were part of a contemplated condemnation proceeding. As a result, Mocci informed his attorney that he did not wish to close

---

[3] We are unable to locate the certification of Barbara Sancilaro in the record on appeal.

title on the property in the event the property was condemned by NJDOT. Mocci was aware that plaintiff declared a default as a result of defendant's failure to pay the $2,000 extension fee by May 31, 1996, and he had instructed his attorney to advise the seller he would pay the $2,000 extension fee so long as it was held in escrow by defendant's attorney until the condemnation issue was resolved. Mocci asserted that after months of review with NJDOT, he determined defendant could still use the premises and instructed his attorney to forward plaintiff's attorney a proposal to close title. He then learned that plaintiff was attempting to sell the premises to another buyer, which caused him to inform plaintiff and the new buyer of defendant's claim to the property. Mocci said he reviewed the certification of Ketan Shah and denied he was informed of plaintiff's offer to sell the property to defendant for $99,000. Mocci claimed defendant would be interested in purchasing the property at a reduced price.

In defendant's brief in opposition to plaintiff's motion for summary judgment, defendant argued that in the event the court determined that defendant breached the contract, then plaintiff alone was entitled to the schedule of losses attached to Naporano's certification. Defendant argued that if the schedule of losses was accurate, plaintiff was not entitled to retain the deposit as liquidated damages, but only the actual damages of $6,720.

On April 18, 1997, the motion judge held argument on plaintiff's motion. The judge reviewed the material facts which were uncontested or admitted and concluded that the contract was clear. The judge found that defendant failed to close or extend the agreement on June 1, 1996, that the contract terminated by its own terms, and that plaintiff was free to enter into a contract with a new buyer.[4] The judge denied summary judgment, however, on damages issue and scheduled a proof hearing for April 29, 1996. At the proof hearing, plaintiff offered testimony concerning the

---

[4] Defendant does not appeal from the summary judgment on liability and therefore, we do not that issue.

original contract price, the attempt to sell the property after defendant refused to close, and the new contract price of $85,000. The judge concluded that the liquidated damage clause should not be enforced and awarded plaintiff damages in the amount of $45,056.62, less a credit for the forfeited deposit. This appeal followed.

## I

Defendant contends the trial judge erred in not enforcing the liquidated damages clause in the contract. Plaintiff argues that the doctrine of judicial estoppel, which operates to bar a party to a legal proceeding from arguing a position inconsistent with one previously asserted, should prohibit defendant from its effort to enforce the liquidated damages clause.

Initially, we find no cause to restrict defendant's argument on liquidated damages. A close reading of the briefs and certifications below reveals that plaintiff originally sought to have the judge declare that it properly retained defendant's deposit as a result of defendant's breach of the contract. Moreover, Naporano's certification submitted in support of plaintiff's motion for summary judgment, included a schedule of losses totaling $6,728.21. Further, in its brief in support of its motion for summary judgment, plaintiff argued that it was entitled to retain defendant's deposit as liquidated damages. Faced with this argument by plaintiff, defendant cited four cases that dealt with liquidated damages clauses: *Nohe v. Roblyn Development*, 296 *N.J.Super.* 172, 686 *A.2d* 382 (App.Div.), *certif. denied*, 149 *N.J.* 36, 692 *A.2d* 50 (1997); *Kutzin v. Pirnie*, 124 *N.J.* 500, 591 *A.2d* 932 (1991); *Van Es v. Honeyleaf Properties, Inc.*, 253 *N.J.Super.* 566, 602 *A.2d* 759 (App.Div.1992) and *Wasserman's Inc. v. Township of Middletown*, 137 *N.J.* 238, 645 *A.2d* 100 (1994). Further, defendant discussed the above cases and argued that courts will only enforce a reasonable liquidated damages clause.

Defendant contended that plaintiff had made only a cursory attempt to define its actual damages, but if the schedule of losses

totaling $6,728.21 was correct, then plaintiff was only entitled to receive that amount in damages. Defendant never argued that the liquidated damages clause was unreasonable, but contended that faced with a claim of actual losses of $6,728.21, plaintiff's damages should be limited to that amount. Defendant also argued in its brief that plaintiff failed to identify what efforts it undertook to sell the property and therefore, summary judgment should be denied.

We are satisfied that based on the arguments presented by each party and the procedural posture of the case before the motion judge, judicial estoppel does not apply here. In general, this doctrine estops a party from asserting a position contrary to a previously asserted position. *See Chattin v. Cape May Greene, Inc.*, 243 *N.J.Super.* 590, 581 *A.*2d 91 (App.Div.), *aff'd. o.b.*, 124 *N.J.* 520, 591 *A.*2d 943 (1991). Moreover, a party must successfully assert a position in order to be estopped from asserting a contrary position in future proceedings. *See Cummings v. Bahr*, 295 *N.J.Super.* 374, 386, 685 *A.*2d 60 (App.Div.1996). Here, at the motion for summary judgment, defendant believed it was faced with a claim by plaintiff for liquidated damages which were almost double the amount of the actual damages. Under those circumstances, defendant contended that the sparse record did not permit it to conduct the necessary analysis under the case law to determine the reasonableness of the liquidated damages clause. Now, faced with a claim of damages well in excess of the liquidated damages clause, defendant argues that the facts presented demonstrate that the liquidated damages clause is reasonable. Under these circumstances, the equitable doctrine of judicial estoppel should not apply to prevent defendant from arguing in favor of the liquidated damage clause.

## II

We turn now to defendant's contention that the trial judge erred in not enforcing the liquidated damages clause in the contract. Aside from its judicial estoppel argument, plaintiff

failed to address defendant's argument seeking enforceability of the liquidated damages clause in the contract.

Whether a liquidated damages clause in enforceable is a question of law for the court to decide. *Wasserman's Inc., supra,* 137 *N.J.* at 238, 645 *A.*2d 100. In *Wasserman's,* our Supreme Court noted that in commercial transactions between parties with comparable bargaining power, a liquidated damages clause may be a lawful remedy. *Id.* at 253, 645 *A.*2d 100. The burden of proof is upon the party challenging the liquidated damages clause. *Wasserman's, supra,* 137 *N.J.* at 253, 645 *A.*2d 100. The Court explained:

> Sophisticated parties acting under the advice of counsel often negotiate stipulated damages clauses to avoid the cost and uncertainty of litigation. Such parties can be better situated than courts to provide a fair and efficient remedy. Absent concerns about unconscionability, courts frequently need ask no more than whether the clause is reasonable.
>
> [*Ibid.*]

The Court further explained that reasonableness is a major factor in the enforcement of liquidated clauses and cited the *Restatement (Second) of Contracts* § 356(1) (1981), which provides that:

> Damages for breach of either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.
>
> [*Id.* at 252, 645 *A.*2d 100.]

Moreover, the Court noted that although courts in the past have determined the enforceability of a liquidated damages clause at the time of the making of the contract, "the modern trend is towards assessing reasonableness either at the time of contract formation or at the time of the breach." *Id.* at 251, 645 *A.*2d 100.

Generally, the question whether a liquidated damages clause is enforceable has arisen in a context where the seller seeks the enforcement of the clause and the buyer seeks to have it declared invalid. That is, the seller's actual damages are substantially less than the liquidated damages and the buyer challenges the liquidated damages provision as a penalty. *See, e.g., Nohe, supra,* 296 *N.J.Super.* at 172, 686 *A.*2d 382. In the instant matter,

however, the roles are reversed. The defendant-buyer is seeking to enforce the liquidated damages clause, while the plaintiff-seller seeks damages in excess of the liquidated damages provision. In our view, the analysis is the same. The essential question is still whether the liquidated damages amount is reasonable in light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. Moreover, we should consider this question either at the time the contract is negotiated or at the time of the breach.

Applying the principles set forth in *Wasserman's, supra,* to the present case, we find no impediment to the enforcement of the liquidated damages clause. The parties are sophisticated business people represented by counsel. At the hearing below, Ronald Weitzman testified that plaintiff is an investment company that invested monies and had acquired the property "in 1994 as a settlement in the bankruptcy court of a second mortgage participating loan." Weitzman claimed that based on discussions with several realtors in the area, the value of the property was approximately $200,000. He claimed that plaintiff initially listed the property for $225,000, but could not sell in that price range. Eventually, defendant offered to acquire the property and the parties reached an agreement.

Thus, the premises had been on the market for some time. In the event of a breach, plaintiff would have had to relist the premises, continue to pay the taxes, and would incur additional fees, including realtor and attorney fees. At the time that the parties negotiated the contract and addendum in the Spring of 1996, the parties could not predict the actual losses in the event of a breach. We conclude that at the time of entering into the agreement, the bargained for liquidated damages clause was neither unduly punitive nor excessively harsh and was not unreasonable.

Considering the circumstances at the time of the breach in June 1996, we reach the same conclusion. By then, there was a question on at least defendant's part whether NJDOT would seek

to condemn a portion of the premises. The affect this had on the property is speculative, but the likelihood is that this new development impacted negatively on the value of the property. Plaintiff was faced with several unanswerable questions at the time of the breach: When would another potential buyer make an offer approaching the previous amount? What amount would be reasonable for plaintiff to accept? Should plaintiff offer the property again to defendant prior to accepting a reduced offer?

We recognize there are many factors that affect the fair market value of property. At the time plaintiff acquired the property, it had received estimates of value in the $200,000 range, and yet plaintiff accepted an offer of $85,000 in October 1996. No other evidence, such as an independent real estate appraisal, was offered to establish the fair market value of the premises. In our view, at the time of the breach, the actual damages were impossible to predict and the liquidated damages provision in the contract was not unreasonable.

In sum, we are satisfied that it was error not to apply the contract provision for liquidated damages. Whether we assess reasonableness at the time of the making of the contract or at the time of the breach, the liquidated damages clause agreed to here, by sophisticated commercial parties, was reasonable.

### III

Lastly, defendant's contention that it should now be permitted to press its counterclaim and third party complaint is clearly without merit. *R.* 2:11–3(e)(1)(E). Defendant did not appeal from the grant of summary judgment on liability in favor of plaintiff. Defendant's attempt to avoid that liability judgment comes too late.

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.