**Dominique PALCSESZ, Plaintiff,**

v.

**The MIDLAND MUTUAL LIFE INSURANCE COMPANY, a corporation of the State of Ohio, Defendant.**

No. CIV. A. 98–2944(DRD).

United States District Court, D. New Jersey.

March 14, 2000.

Ronald F. Esposito, Elizabeth, NJ, for Plaintiff.

David R. Kott, Edward J. Fanning, Jr., McCarter & English, LLP, Newark, NJ, for Defendant.

## OPINION

DEBEVOISE, Senior District Judge.

This diversity insurance action arises from the death of Imre Palcsesz. Mr. Palcsesz's wife, plaintiff Dominique Palcsesz, seeks to recover life insurance proceeds on a policy issued to her husband by defendant Midland Mutual Life Insurance Company ("Midland"). The manner of decedent's death is the primary issue in the case, as it will determine Midland's liability under the insurance policy. Defendant Midland moves for summary judgment on the grounds of judicial estoppel. For the reasons set forth herein, Midland's motion will be granted and the complaint will be dismissed with prejudice.

## STATEMENT OF FACTS

On May 2, 1997, decedent Imre Palcsesz was found dead at his place of work, his body face down on the pavement near the base of a 116–foot clock tower building. An investigation conducted by detectives from the Summit Police revealed evidence to suggest that his death may have been a suicide.

Decedent took out a $350,000 life insurance policy with Midland approximately twenty-three months before his death, naming plaintiff as a beneficiary. The policy contains a standard clause limiting Midland's liability to repayment of premiums if the insured commits suicide within two years of the issue date of the policy ("the suicide clause"). Plaintiff filed a claim on the insurance policy on August 27, 1997. Midland has refused to pay plaintiff the face amount of the policy, citing the suicide clause.

On June 4, 1998, plaintiff filed this lawsuit in the Superior Court of New Jersey for Union County, demanding payment of the face value of the insurance policy. Midland removed the case to this Court on June 23, 1998, and filed its answer on July 15. In its answer, Midland interposes both the suicide clause and judicial estoppel as defenses to the action. Plaintiff denies that her husband committed suicide.

Prior to filing this action, plaintiff sought to recover workers' compensation benefits for her husband's death. On August 22, 1997, she filed a Workers' Compensation Dependency Claim Petition with the New Jersey Department of Labor, Division of Workers' Compensation. On the claim form, under a section titled "How Injury Occurred," plaintiff wrote "occupational stress-caused susicide [sic]." The workers' compensation action was eventually settled and dismissed. Plaintiff received a lump sum settlement in the amount of $10,000.

## STANDARD OF REVIEW

Summary judgment will be granted if the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

Rule 56(c) imposes a burden on the moving party simply to point out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the burden then shifts to the opposition to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The evidence need not be in a form that would be admissible at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment. *Id.* at 247, 106 S.Ct. 2505. In determining whether there exists a material issue of disputed fact, however, the facts and the inferences to be drawn from the facts are to be viewed in the light most favorable to the nonmoving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986).

In addition to being genuine, the disputed facts must be material, as determined by the substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Debate over extraneous issues will not suffice; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

### *DISCUSSION*

Midland contends that plaintiff is judicially estopped from claiming that her husband's death was accidental by her prior assertion, in her workers' compensation claim, that her husband's death resulted from an occupational stress-related suicide.

### A.  Applicable Law

Midland observes that "there is a question as to whether state or federal judicial estoppel law applies in a diversity action." *National Utility Serv., Inc. v. Chesapeake Corp.,* 45 F.Supp.2d 438, 445 (D.N.J.1999); *Ryan Operations v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 358 n. 2 (3d Cir.1996). *See also* 18 MOORE'S FEDERAL PRACTICE § 134.34[2] (3d ed.) (noting that the federal circuit courts are split on the question of whether the *Erie* doctrine requires application of state judicial estoppel law in diversity cases). This district has previously deemed the question irrelevant, however, in the belief that "New Jersey judicial estoppel law is consistent with the federal law." *National Utility,* 45 F.Supp.2d at 445.

Midland urges a reconsideration of that belief, claiming that while federal law requires the court to determine whether the inconsistent positions were asserted in bad faith, *see Motley v. New Jersey State Police,* 196 F.3d 160, 163 (3d Cir.1999), New

Jersey courts will apply judicial estoppel regardless of a party's intent. In support of this claim, Midland relies almost exclusively on *Levin v. Robinson, Wayne & La Sala,* 246 N.J.Super. 167, 586 A.2d 1348 (Law Div.1990).

In *Levin,* plaintiff sued his former partnership, claiming that the partnership owed him a balance under the terms of the partnership agreement. *Id.* at 170, 586 A.2d 1348. In a prior matrimonial action, however, he advanced a contrary position, asserting that he had received all funds to which he was entitled under the partnership agreement. *Id.* Plaintiff argued that he should not be judicially estopped because his prior inconsistent position was based on a mistake of law and had not been intended to mislead the matrimonial court. *Id.* at 183, 586 A.2d 1348.

The *Levin* court rejected this argument, stating that "regardless of Levin's purported motives or intent for doing so, he cannot now contradict the position which he intentionally advanced in his prior action." 246 N.J.Super. at 183, 586 A.2d 1348. The court went on to state that "when considering whether to estop a party from taking a position, a court should consider whether that party took the opposite position in a prior judicial proceeding, not whether the party now taking a contradictory position intended to deceive the court." *Id.* at 186, 586 A.2d 1348, *quoting Wang Lab. v. Applied Computer Sciences, Inc.,* 741 F.Supp. 992, 996 (D.Mass.1990). *See also North Jersey Sav. & Loan Assoc. v. Fidelity & Deposit Co.,* 283 N.J.Super. 56, 81, 660 A.2d 1287 (Law Div.1993) ("[i]t is difficult to understand how... inconsistent positions can be taken unintentionally. But even if they were, there is no good faith exception to the doctrine").

█ Notwithstanding the language found in these two cases, I find that application of judicial estoppel under New Jersey law requires some degree of culpable conduct. The mechanical rule urged by Midland conflicts with the established understanding that judicial estoppel is · an

equitable doctrine designed to protect the integrity of the judicial system by preventing litigants from playing fast and loose with the court to suit the exigencies of self-interest. *See Bahrle v. Exxon Corp.*, 279 N.J.Super. 5, 22–23, 652 A.2d 178 (App. Div.1995); *Cummings v. Bahr*, 295 N.J.Super. 374, 387, 685 A.2d 60 (App.Div. 1996). It naturally follows that, where there is no evidence of an intent to play fast and loose with the courts, there is no reason to apply the doctrine. In *Estate of Kathryn Sherrer v. Barnes*, A–5666–96T5, at p. 18 (N.J.App.Div. Aug. 5, 1999), an unreported case provided by Midland, the New Jersey Appellate Division observed that "[i]t is not the plaintiff's uncertainty that triggers judicial estoppel; it is his willingness to take advantage of that uncertainty by insisting on one fact in one case, and the opposite fact in another, without any identifiable or objective facts to justify or warrant a change in position." *See also Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir.1996) (describing intent to mislead the court to gain unfair advantage as the determinative factor in the application of judicial estoppel to a particular case).

Moreover, "[t]he application of judicial estoppel is discretionary, depending upon the merits of each case." *New Jersey Div. of Motor Vehicles v. Caruso*, 291 N.J.Super. 430, 438, 677 A.2d 795 (App.Div.1996). New Jersey courts have refused to apply judicial estoppel where a party adopts an inconsistent position in good faith. *See, e.g., C.R. v. J.G.*, 306 N.J.Super. 214, 238–39, 703 A.2d 385 (Chancery Div.1997) (holding that judicial estoppel requires knowledge of the facts and would not apply where a party's statement in the prior litigation was based on an ignorance of the facts and not an attempt at deception); *Naporano Assocs. v. B & P Builders*, 309 N.J.Super. 166, 174–75, 706 A.2d 1123 (App.Div.1998) (holding that a defendant who had previously argued that the plaintiff should be limited to actual damages instead of liquidated damages was not judicially estopped from arguing for liquidated damages when

further investigation revealed that the liquidated damages were reasonable).

■] Having reviewed the cases cited by Midland, I find that New Jersey's application of judicial estoppel is entirely consistent with the law of this Circuit, which obviates the need to resolve the *Erie* question. *See National Utility*, 45 F.Supp.2d at 445 ("because there is no relevant difference between the two rules, this Court will apply federal law"). Under both federal and New Jersey law, judicial estoppel is an equitable, discretionary doctrine which preserves the integrity of the judicial system "by preventing parties from playing fast and loose with the courts in assuming inconsistent positions." *Motley v. New Jersey State Police*, 196 F.3d 160, 163 (3d Cir.1999); *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 617 (3d Cir.1996). Application of judicial estoppel should not be formulaic, as each case must be decided upon its own particular facts and circumstances. *Motley* at 163; *McNemar* at 617.

■ In determining whether to apply judicial estoppel, courts in this Circuit apply a two-part test set forth in *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355 (3d Cir.1996). The court must examine: 1) whether the present position asserted by the litigant is inconsistent with a position formerly asserted, and; 2) if so, whether either or both of the inconsistent positions were asserted in bad faith, i.e., with the intent to play fast and loose with the court. *Ryan Operations* at 361; *Motley* at 164. The Third Circuit has recently stated that " 'courts should carefully adhere to the two-part test of *Ryan Operations*' before applying judicial estoppel." *Motley* at 163, *quoting Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 n. 5 (3d Cir.1997).

**B. Did Plaintiff Assert a Prior Inconsistent Position?**

■ There is no question that plaintiff has adopted two fundamentally inconsistent positions regarding the manner of her

husband's death. After unequivocally stating that her husband's death was caused by suicide, she now insists that his death was accidental. It does not matter that plaintiff's prior position was made in the context of an administrative proceeding. *See McNemar*, 91 F.3d at 618 (applying judicial estoppel where party made prior inconsistent representations to federal and state agencies). *See also King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir.1998) (stating that to be judicially estopped, a party "must be asserting a position that is factually incompatible with a position taken in a prior judicial *or administrative* proceeding") (emphasis added); *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir.1997) (finding "the fact that plaintiff made his sworn statement in an administrative proceeding does not exempt him from application of the doctrine of judicial estoppel"); *Portela–Gonzalez v. Secretary of Navy*, 109 F.3d 74, 78 (1st Cir.1997) (holding that a party cannot take one position in an administrative proceeding and then disclaim it in a subsequent suit); *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 604 (9th Cir.1996) (finding workers' compensation proceedings equivalent to judicial proceedings and remarking that "we are not aware of any case refusing to apply [judicial estoppel] where the prior proceeding was administrative rather than judicial").

Nor does the doctrine require an adjudication of the position on its merits. *See McNemar* at 615–16 (applying judicial estoppel where inconsistent statements were made in applications for disability benefits and for a student loan exemption). *See also King*, 159 F.3d at 197–98 (finding judicial estoppel where inconsistent statements were made in an application for Social Security disability benefits); *Safelite Glass*, 128 F.3d at 72 (holding same); *In re Alcon Demolition, Inc.*, 204 B.R. 440 (Bankr.D.N.J.1997) (stating that judicial estoppel applies to "not only statements made to judicial entities, but also positions taken in administrative filings"). *But see Griffith v. Wal–Mart Stores, Inc.* (holding that application of judicial estoppel to

statements made in an application for Social Security benefits "would be inappropriate given that the truth-seeking function of the court would be supplanted by an agency administrative decision rendered without an evidentiary hearing").

## C. Was the Inconsistent Position Asserted in Bad Faith?

Establishing the existence of an inconsistency is, however, only half of the inquiry. As the Third Circuit recently observed, a prior inconsistent statement appearing in an administrative application is not a *per se* bar to further litigation. *See Motley*, 196 F.3d at 163. The *Ryan Operations* test requires a determination of whether either or both of the inconsistent positions were "asserted in bad faith, i.e., with the intent to play fast and loose with the court." *Ryan Operations* at 361; *Motley* at 164.

Courts have been willing to excuse an inconsistency on the grounds of good faith in several situations. First, courts have refused to apply judicial estoppel where a statement is susceptible to more than one interpretation. In *Scott v. Land Span Motor, Inc.*, 781 F.Supp. 1115, 1120 (D.S.C.1991), a personal injury plaintiff was not precluded from seeking damages for loss of earnings despite earlier statements in an employment proceeding that she was "able to do the job." The court noted "a possible ambiguity... as to what the phrase 'able to do the job' means." *Id.* Similarly, in *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir.1973), the Fifth Circuit Court of Appeals refused to interpret "general language" claiming that the entire balance was due on an installment contract as equivalent to an admission that the work had been completed, remarking that judicial estoppel "does not allow for the resolution of ambiguities in favor of estoppel."

Second, courts have been reluctant to apply judicial estoppel where a statement contains a legal conclusion, as distinguished from a purely factual inconsisten-

cy. In *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), for example, the Supreme Court refused to establish a *per se* rule that a person who claims she is unable to work, in an application for Social Security disability benefits, is estopped from claiming that she can perform the essential functions of her previous job when pursuing a claim under the Americans With Disabilities Act. The Court acknowledged that a statement of total disability when applying for Social Security benefits does not "involve directly conflicting statements about purely factual matters, such as 'The light was red/green,' or 'I can/cannot raise my arm above my head.'" 119 S.Ct. 1597, 143 L.Ed.2d at 974. Instead, the statement "often implies a context-related legal conclusion, namely 'I am disabled for purposes of the Social Security Act.'" *Id.See also Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir.1996) (stating that "the position sought to be estopped must be one of fact rather than law or legal theory").

Third, courts have sometimes been willing to excuse inconsistencies where the party lacked sufficient knowledge of the statement's truth when it was made. *See, e.g., C.R. v. J.G.*, 306 N.J.Super. 214, 238–39, 703 A.2d 385 (Chancery Div.1997) (holding that judicial estoppel requires knowledge of the facts and would not apply where a party's statement in the prior litigation was based on an ignorance of the facts and not an attempt at deception); *In re Chambers Development Co.*, 148 F.3d 214, 229 (3d Cir.1998) (stating judicial estoppel will not apply where inconsistent positions are asserted in good faith or through inadvertence); *John S. Clark Co. v. Faggert & Frieden*, 65 F.3d 26, 29 (4th Cir.1995) (holding application of judicial estoppel inappropriate "when a party's prior position was based on inadvertence or mistake").

None of these considerations are present here. There is simply nothing ambiguous about plaintiff's statement that her husband's death resulted from occupational stress-related suicide. Nor is the statement a legal conclusion; whether plaintiff's husband took his own life is purely a factual issue. The word "suicide," when found in a workers' compensation claim petition, has no particular context-related significance. Finally, there is no evidence that plaintiff's statement was based on a mistake or lack of knowledge of the facts surrounding her husband's death.[1]

The only explanation for plaintiff's abrupt shift in position regarding the manner of her husband's death is that of her attorney, who states that "despite some reservations I had concerning the manner and mode of decedent's death... I nevertheless decided to accept the official police version of suicide for the purpose of filing suit in the Worker's Compensation claim." In essence, he asserts that plaintiff has always insisted that her husband's death was not a suicide and she should not be penalized for his failure to adequately investigate the decedent's manner of death before filing the workers' compensation petition.

Regardless of the subjective beliefs plaintiff may have held regarding the manner of her husband's death, the fact remains that plaintiff filed a petition for workers' compensation dependency benefits stating that his death resulted from occupational stress-related suicide. The significance of filing such a petition was recently remarked upon by the New Jersey Supreme Court in *Lapka v. Porter Hayden Co.*, 162 N.J. 545, 745 A.2d 525 (2000). By New Jersey statute, a workers' compensation petition must be verified by oath or affirmation. *See* N.J.S.A. § 34:15–51, *Lapka;* 162 N.J. 545, 745 A.2d 525, 2000 WL 215657 at *5. The Court stated

---

1. Although plaintiff hired a former homicide detective to conduct an independent investigation into the manner of her husband's death, the expert's report indicates that he was not retained until six months *after* plaintiff filed this lawsuit in the New Jersey Superior Court.

that "we cannot overlook the information contained in the plaintiff's sworn petition without jeopardizing the integrity of the petition itself... Courts in other jurisdictions are in wide agreement that a sworn and signed workers' compensation petition cannot be disavowed by a plaintiff subsequently seeking to establish a lack of knowledge." *Id.*

Not only did she file her petition, plaintiff was present before the Compensation Judge on August 17, 1998 as her attorney stated that the police investigation showed her husband's death was a suicide. Plaintiff was examined by her attorney and by the Compensation Judge and was given the opportunity to ask questions before accepting the settlement in that proceeding. She said nothing to indicate that she believed her husband's death to have occurred in some manner other than suicide.

In sum, plaintiff has offered no reasonable explanation for her change in position. She does, however, stand to gain financially from her change of mind. Having already received $10,000 in settlement of her claim for workers' compensation death benefits, she now seeks to recover $350,000 in life insurance benefits by adopting a position irreconcilable with the one she took in the worker's compensation proceeding. Where parties employ such tactics without explanation, bad faith can be inferred because "[i]t is difficult to get around the conclusion that, in at least one of the fora, [plaintiff] was not completely honest." *Motley,* 196 F.3d at 166. At least one of plaintiff's positions regarding the manner of her husband's death was asserted in bad faith.

Judicial estoppel is intended to preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts, and plaintiff "cannot be permitted to proceed on inconsistent positions, seeking the advantage of whichever cause of death serves [her] financial interest in each case." *Estate of Kathryn Sherrer, supra,* at 18. *See also King v. Herbert J. Thomas Mem'l Hosp.,* 159 F.3d 192, 198 (4th Cir.1998) ( "[t]o allow [plaintiff] to obtain benefits from two sources based on two incompatible positions, simply because the positions aid her claims for remuneration, would reduce truth to a mere financial convenience and would undermine the integrity of the judicial process"). In the circumstances of this case, application of judicial estoppel is warranted, and Midland is entitled to summary judgment.

## CONCLUSION

For the reasons stated herein, Midland's motion for summary judgment will be granted and plaintiff's complaint will be dismissed with prejudice. An order implementing this decision shall be entered.