# United States Court of Appeals
## For the First Circuit

No. 00-1300

HONEY DEW ASSOCIATES, INC.,
AND BOWEN INVESTMENT, INC.,

Plaintiffs, Appellants,

v.

M & K FOOD CORP., IRWIN KAY,
AND ADELE KAY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Lynch, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Jack J. Mikels, with whom Linda J. Keogh and Jack Mikels & Associates were on brief for appellants.
Irving Brodsky for appellees.

February 23, 2001

**LIPEZ, Circuit Judge**. The trial in the district court was about the breach of a franchise agreement and the reasonableness of a liquidated damages clause. The court refused to enforce the liquidated damages clause, deeming it a penalty. We conclude that the court misallocated the burden of proof and lacked an adequate factual basis for its penalty determination. We therefore vacate the judgment and remand for further proceedings.

## I.

Bowen Investment Inc. ("Bowen"), a sub-franchisor of Honey Dew Associates, Inc. ("Honey Dew"), entered into a franchise agreement with M & K Food Corporation ("M & K"), on June 9, 1992. This contract included a "Supplemental Agreement," which amended the principal document's statement of damages in the event of breach. Irwin and Adele Kay were guarantors of the agreement for M & K, which gave them the right to establish and operate a Honey Dew donut shop in Providence, Rhode Island. The term of the agreement was for 10 years. The Kays expended over $240,000 to get the business up and running. However, due to personal financial difficulties, M & K became delinquent in weekly franchise royalties and service fees in amounts running just over $300. Bowen also cited operational

problems with the shop that breached the franchise agreement. After several warnings, including issuance of a default notice in February 1998, Bowen terminated the agreement on or about March 2, 1998.

Despite receipt of the termination notice, M & K continued using the Honey Dew trade marks and trade dress. This practice continued until the district court preliminarily enjoined it on February 22, 1999, after a hearing. M & K was permitted to continue operation of a generic doughnut shop in the same leased location.

The district court awarded summary judgment to the plaintiffs on M & K's liability for trademark infringement and breach of contract. The court determined that Bowen had validly terminated the franchise agreement for M & K's chronic failure to make timely royalty payments even after notice and expiration of the cure period. The court also ordered a hearing on damages and commented on the liquidated damages issue:

> I recognize that plaintiffs want some sort of remedy that is prescribed by the franchise agreement. Whether that's appropriate or not, whether it results in a penalty or forfeiture, is something the Court will decide at a later time. So I will tell you now that I have no idea whether I will impose damages on Count IV [seeking enforcement of the supplemental agreement on royalty payments in the event of breach], and if I do what the amount will

be.  But that will be determined at a later
time after proof and argument.

The district court held a hearing on damages on April
14 and 15, 1999.  The court said nothing about its expectations
for proof on the liquidated damages clause at the outset of the
hearing.  In opening remarks, the plaintiffs said they would
present evidence on the calculation of liquidated damages
according to the formula established in the franchise agreement.
The court responded to this introduction by stating, "you've got
to prove your case. . . . You've got to make some proof here."

Bowen and Honey Dew sought liquidated damages for
breach in accord with the Supplemental Agreement entered into
with the franchisee.  These damages included "all royalty and
other payments which, but for the termination, would have been
due through the intended expiration of this Agreement."  These
damages were to be calculated as "the average of the royalties
due for the calendar year ending prior to termination."  The
plaintiffs put on testimony to support this calculation of
damages, demonstrating how the average royalties from the
franchise's history should be applied to the liquidated damages
formula in the contract.  The plaintiffs waived recovery for
trademark infringement, stating that "in light of the damages
already requested under the contract, we don't feel it's cost
effective to proceed on the Lanham Act statutory damages."

-4-

In their case, the defendants did not challenge the liquidated damages calculations of the plaintiffs and they offered no evidence to show that the liquidated damages clause worked a penalty. Instead, they concentrated on aspects of the franchisee-franchisor relationship that may have contributed to M & K's failure, including exclusion from promotions and the proximity of other Honey Dew franchises. Both parties submitted evidence as to the amount of counsel fees at issue.

At the close of the evidence, the court said that the plaintiffs' "failure of proof" on the issue of actual damages and mitigation raised "a question as to whether that clause is valid and should be enforced, and I think that's an issue neither side has truly addressed." During the plaintiffs' final argument, the court said, "I don't know if it's valid . . . . [I]t seems to me that there are penalty aspects to this." Hearing this, the defendants echoed the judge's concern in their closing argument: "I have now, of course, the benefit of your Honor's expressions and thinking with reference to [the liquidated damages clause], . . . this clause in the supplementary agreement is nothing short of a confiscatory nature and a penalty." In rebuttal, the plaintiffs complained about this late injection of the penalty issue:

> I assure the Court that had these issues
> been raised prior to or during the trial, I

> not only feel comfortable that we would have been able to convince the Court that these were fair and reasonable provisions both then and now, but our entire case would have been extremely different, and I feel that it's, although I understand the Court's hesitation in enforcing the clause, I feel it's only fair to take the case as it was presented to you and not penalize us for the fact that we weren't really given an opportunity to make the appropriate arguments as to those issues and present the proof as to those issues.

In light of these arguments, the court required post-trial memoranda on enforcing the liquidated damages clause and calculating attorneys' fees.

The plaintiffs argued in their memorandum that the defendants had waived the penalty as an affirmative defense. "Significantly, the defendant in this litigation did not contest the validity of the method of calculating liquidated damages. . . . [A] party seeking to invalidate a liquidated damages clause bears the burden of proving this affirmative defense." The plaintiffs also reiterated that if they had known the validity of the liquidated damages clause was in question, "the entire case would have been litigated differently, with different witnesses."

In their memorandum, the defendants asserted that the plaintiffs "have the burden of demonstrating that the liquidated damages provision is enforceable. . . . The plaintiffs failed to

prove that either the amount fixed was a reasonable forecast of just damages or that the harm caused would be incapable or difficult to estimate." Additionally, they stated that the damages formula acts as a penalty because "it is designed always to assure the plaintiffs more than their actual damages." Finally, the defendants asserted that, in seeking enforcement, the plaintiffs failed to account for mitigation of damages by the defendants.

After considering the evidence and the memoranda of counsel, the court decided that the liquidated damages clause was an unenforceable penalty and awarded nominal damages of one dollar to Bowen and Honey Dew. The court made this determination pursuant to the law of Massachusetts, as specified by a choice of law provision in the contract. Because the term specifying attorneys' fees and costs was part of the liquidated damages clause in the supplemental agreement, the district court ruled that it was also unenforceable. Both of these rulings were erroneous.

## II.

Plaintiffs argue on appeal that because M & K never pled explicitly that the liquidated damages clause was an unenforceable penalty, they have waived any claim to this affirmative defense. Although failure to plead an affirmative

defense generally "results in its waiver and exclusion from the case," Boston Hides & Furs, Ltd. v. Sumitomo Bank, Ltd., 870 F. Supp. 1153, 1161 (D. Mass. 1994), the defendants' pleadings in this case provided notice of the penalty defense. They state that the relief plaintiffs seek would "present a definite forfeiture of defendants' business and their immense investment; and by every principle of equity and justice, such forfeiture should not be enforced." In context, this defense primarily contests the fairness of stripping the franchise of the Honey Dew trade name and prohibiting further operation of a doughnut business at the existing site. Still, this statement indicates the defendants' concern that the relief that could be awarded to the plaintiffs would constitute a penalty. Moreover, the judge understood the presence in this case of the penalty defense to the claim of damages. Again, as the court stated at the close of the liability phase of the case, almost three months before the hearing on damages, "I recognize that plaintiffs want some sort of remedy that is prescribed by the franchise agreement. Whether that's appropriate or not, whether it results in a penalty or forfeiture, is something the Court will decide at a later time."

Under these circumstances, we conclude that the defendants did not waive the penalty defense to the enforcement

of the liquidated damages clause in their pleadings.  At trial, however, they failed to present evidence on the enforceability of the liquidated damages clause.  So did the plaintiffs.  We now assess the significance of this odd circumstance.

### III.

Not surprisingly, the court revealed some uncertainty about whether the plaintiffs had the burden of proving that the liquidated damages clause in the franchise agreement did not impose an unenforceable penalty, or whether the defendants had the burden of proving that it did.  In their post-trial memorandum, the plaintiffs cited law from New Jersey and Connecticut in support of their assertion that the defendants had the burden of proving that the liquidated damages clause imposed an unenforceable penalty.  See Naporano Associates, L.P. v. B & P Builders, 706 A.2d 1123 (N.J. Super. 1998); Norwalk Door Closer Co. v. Eagle Lock & Screw Co., 220 A.2d 263 (Conn. 1966).  Defendants cited law from Maine in support of their insistence that the plaintiffs had to prove that a liquidated damage clause did not impose such a penalty.  See Pacheco v. Scoblionko, 532 A.2d 1036 (Me. 1987).[1]  Neither party cited the

---

[1] The court in this case recognized, however, that while few jurisdictions have addressed the issue, "an apparent majority" favor the view that the party challenging the liquidated damages provision bears the burden of proof.  Id. at 1038-39.

law of Massachusetts. So far as we can discern, there is no definitive statement by the Massachusetts courts on this issue. At most, we find cases stating that defendants who challenged contract enforcement on the basis of illegality or a violation of public policy have the burden to raise and prove that defense. See Fedenyszen v. Pollano, No. 9413, 1997 WL 382114 at *2 (Mass. App. Ct. June 25, 1997) (relating to contract enforcement: "The burden was on the defendant to raise and prove the affirmative defense of illegality or a violation of public policy.") We also find a federal district court case which assigns the burden of demonstrating unenforceability to the party hoping to avoid enforcement of the contract. See New England Mut. Life Ins. Co. v. Stuzin, No. 86-2470-S, 1990 U.S. Dist. Lexis 13137 *13 (D. Mass. Oct. 1, 1990) (regarding material issues surrounding enforceability of liquidated damages clauses, "defendants have the burden of proof.").

Our search of the treatises and academic literature leads us to the conclusion that the prevailing rule is that the party challenging the enforceability of a liquidated damages clause has the burden of proving that it is a penalty. "[T]he trend toward increased enforcement of stipulated damages is also encouraged by a shifting of the burden of proof to the party who asserts the existence of an unlawful penalty. The shifted

burden of proof, enacted by statute in some states, has probably now become the majority rule, replacing the earlier rule requiring the enforcer of a contract to prove the absence of an unlawful penalty." Joseph F. Brodley & Ching-to Albert Ma, Contract Penalties, Monopolizing Strategies, and Antitrust Policy, 45 Stan. L. Rev. 1161, 1179 (1993) (citing 25A C.J.S. Damages § 144(f) (1966)). See also Melvin Aron Eisenberg, The Limits of Cognition and the Limits of Contract, 47 Stan. L. Rev. 211, 236 (1995) ("[A] liquidated damages provision should relieve the plaintiff of the burden of proving damages, by shifting to the defendant the burden of establishing that the liquidated damages provision is unenforceable.); 22 Am. Jur. 2d Damages § 905 (1999) ("[W]here the contract contains a liquidated damages clause, the party seeking to repudiate that clause must show that agreed damage is so exorbitant as to be in [the] nature of a penalty.").

Given this authority, and the Massachusetts precedents cited above dealing with proof of the unenforceability of contracts in other contexts, we conclude that if the Massachusetts Supreme Court were required to decide the issue before us definitively, it would assign the burden of proving the unenforceability of a liquidated damages clause to the party raising that defense (here, the defendants). See Losacco v.

-11-

F.D. Rich Construction Co., Inc., 992 F.2d 382, 384 (1st Cir. 1993) ("When the highest state court has not issued a definitive ruling on the precise issue at hand, the federal courts may refer to analogous decisions, considered dicta, scholarly works, or other reliable sources to ascertain how the highest court would rule."). For that reason, we conclude that the trial court erred in requiring that the plaintiffs prove that the liquidated damages clause did not impose a penalty on the defendants.

In addition, we note that the district court decided the penalty issue without the benefit of any pertinent evidence. For example, after observing that plaintiff Bowen "was relieved of its duties under the Franchise Agreement as a consequence of M & K's default and termination," the court wrote in its opinion that "[c]ommon sense dictates that Bowen will save an unstated amount because it does not have to supervise the operation of the shop and regularly send personnel to Rhode Island to ensure that M & K complies with the Franchise Agreement (for example, the sanitary standards set forth in Honey Dew's policies)." The court similarly emphasized that the damages clause is an unenforceable penalty "because, at the time the agreement was made, it was not a reasonable estimation of the potential loss which would occur if there was breach and termination of the

Franchise Agreement."  The court explained this conclusion on the basis of logic and inference:

> Under the terms of the franchise agreement, royalties were to be paid to plaintiffs on a monthly basis to June 8, 2002.  It was known at the time of contracting that if M & K had defaulted under the terms of the Franchise Agreement and it was terminated, the loss sustained by Bowen would be some small unknown amount every month through to the expiration date of the agreement.  To require M & K to make all of those future payments in one lump sum as of the time of termination cannot reasonably be viewed as compensation for Bowen's loss, but rather as a penalty for the breach since there is no provision for discounting the amount to present value.  Consequently, the damages clause calls for the payment of an unconscionable penalty.

In the circumstances of this case, these judgments based on common sense and logic should have been informed by an understanding of the factual predicates for the liquidated damages clause.  Determining the validity of a liquidated damages clause is usually a fact-specific exercise.  See A-Z Servicenter, Inc. v. Segall, 138 N.E.2d 266, 268 (Mass. 1956); Zapatha v. Dairy Mart, Inc., 408 N.E.2d 1370, 1374-75 (Mass. 1980).  In the relevant commercial code context, when there are claims of unconscionable contract provisions, Massachusetts law requires that "the parties shall be afforded a reasonable opportunity to present evidence as to [the contract's or clause's] commercial setting, purpose and effect to aid the

-13-

court in making its determination." Mass. Gen. Laws ch. 106, § 2-302(2).[2]

In their post-trial memorandum, the plaintiffs noted correctly the absence in the record of evidence on the penalty issue: "[A]t trial, there was no evidence presented as to either negotiations or intention, making it virtually impossible to second guess whether the provision was reasonable at the time it was negotiated."[3]  They go on to suggest the types of evidence they would have offered to defend against a claim that the clause constituted a penalty: "actual damages, the projected royalty stream over the remainder of the contractual term, the present value of the damages and the factors which were considered in establishing the liquidated damages clause."  In

---

[2] Massachusetts courts dealing with claims of unconscionable contract terms have recognized the relevance of the Uniform Commercial Code provisions in analyzing the claims before them even if the contract was not covered by the Code.  See Zapatha, 408 N.E.2d at 1374-75 (invoking the provisions of the sales article regarding good faith and unconscionability by analogy, while recognizing that franchise agreements may be distinct from contracts for sale of items).

[3] Under Massachusetts law, "a judge, in determining the enforceability of a liquidated damages clause, should examine only the circumstances at contract formation.  Our position is that 'where actual damages are difficult to ascertain and where the sum agreed upon by the parties at the time of the execution of the contract represents a reasonable estimate of the actual damages, such a contract will be enforced.'"  Kelly v. Marx, 705 N.E.2d 1114, 1117 (Mass. 1999) (quoting A-Z Servicenter, Inc. v. Segall, 138 N.E.2d 266, 268 (Mass. 1956)).

the plaintiffs' brief on appeal, they cite "a variety of factors on both sides which could have been considered in selecting the formula to which the parties agreed." The court needed to hear evidence about these factors before deciding the penalty issue.[4]

We recognize that the defendants did not present any evidence on the unenforceability of the liquidated damages clause. Arguably, given this absence of evidence, and our conclusion that the defendants have the burden of proving that the clause imposes an unenforceable penalty, we should vacate the judgment of the court and order the entry of judgment for the plaintiffs. We reject that conclusion, however. The confusion about the proper allocation of the burden of proof on the enforceability of the liquidated damages clause hampered both parties in properly addressing the issue. Indeed, the court's insistence about the plaintiffs' responsibility to prove that the clause was not a penalty may have lulled the defendants into complacency about their evidentiary burden on this issue.

---

[4] In characterizing the liquidated damages provision as an acceleration clause, the court wrote, "it is well settled law that other than in a mortgage or security agreement situation, 'an acceleration clause cannot be viewed as one for liquidated damages if the full amount owing cannot be an estimate of the true extent of the damages sustained upon the breach.'" (citation omitted). Without considering evidence, the court concluded that the liquidated damages clause could not be an estimate of the true cost of the breach and thus was unenforceable. Again, this conclusion required evidence.

-15-

We conclude, therefore, that the fairest outcome to both parties is a remand for further proceedings.

## IV.

**Fees and costs**

The district court concluded that "[Bowen's] claim for counsel fees is based solely on the last sentence of the damages clause." Because it "declared that clause unenforceable and the counsel fee provision is an integral part thereof, counsel fees are not recoverable in this case." We disagree. The sentence making the franchisee "liable for all costs resulting from its default and all costs of collection including reasonable counsel fees" is not integral to the liquidated damages clause. Indeed, there was no indication at trial that this term was troubling to the court, even if the liquidated damages clause was.[5] Accordingly, with the plaintiffs having prevailed on liability, the court should award reasonable costs and fees to the plaintiffs on remand for the litigation to date, with additional costs and fees to be awarded to the plaintiffs for the pending penalty litigation if they prevail on that issue.

---

[5] The district court requested post-trial briefs from the parties on whether the fees should be calculated pursuant to Rhode Island or Massachusetts rates. Neither party indicated that this term might be unenforceable as part of an invalidated liquidated damages clause.

-16-

Judgment vacated.  Remanded for further proceedings consistent with this opinion.