### DAYS INN OF AMERICA, INC., Plaintiff,

v.

### Ishwarlal B. PATEL, Defendant.

#### No. 99–3006.

United States District Court,
C.D. Illinois,
Springfield Division.

April 5, 2000.

Frederic A. Cohen, Shannon A. Sullivan, Chicago, IL, Paula J. Morency, Robin M. Spencer, Chicago, IL, for plaintiff.

Jonathan C. Wright, Lincoln, IL, for defendant.

## *OPINION*

RICHARD MILLS, District Judge.

Who wants to stay in a dirty motel room?

Days Inns believed that no one would and also believed that Defendant breached the franchise agreement by not keeping his facility up to snuff.

Defendant argues that he was relieved of his obligations under the franchise agreement because the road leading to his facility from the interstate was closed for a period of time by the Illinois Department of Transportation.

However, under New Jersey law, a bridge's closure does not absolve Defendant of his duty to keep his motel rooms clean.

Motion for summary judgment allowed.

## I. BACKGROUND

On June 1, 1994, Days Inns of America, Inc. ("Days Inns"), and Ishwarlal Patel entered into a franchise agreement for the operation of a 60 room guest lodging facility located at 2011 Kickapoo Street, Lincoln, Illinois.[1] This franchise agreement provided that Patel was to operate the facility for a 15 year term ending on June 1, 2009. The franchise agreement also contained the following provisions which are relevant to this case.

First, pursuant to section 8 of the franchise agreement, Patel agreed to pay Days Inns certain fees for royalties, taxes, interest, etc., referred to as "recurring fees." Second, section 3 provided that Patel was to make renovations to the facility in order to bring it into compliance with Days Inns' "system standards," "appropriate plans," and "punch list" as defined within the franchise agreement. Specifically, Patel agreed to achieve a quality inspection score of at least 425 or an equivalent score within nine months of the effective date of the franchise agreement.

Third, section 19 gave Days Inns the right to terminate the franchise agreement upon Patel's failure to cure certain breaches of his obligations under the franchise agreement including (1) a failure to maintain the property in accordance with Days Inns' quality assurance requirements and to remedy such a failure within 30 days of receipt of notice from it specifying one or more breaches and (2) a failure to pay all recurring fees on a timely basis and to pay amounts due to Days Inns under the franchise agreement within ten days of receipt of its written demand. Fourth, section 20 contained a liquidated damages clause to be invoked by Days Inns in the event of a breach of the franchise agreement by Patel. Finally, section 28 of the franchise agreement provided that the agreement was governed by New Jersey law.

On December 29, 1995, Days Inns conducted a quality assurance inspection of the facility. During the inspection, the inspector noted dirty and damaged guest rooms, including burns in the bedding, dirty toilets, severely stained carpets and ceilings, and food left uncovered in the restaurant. Accordingly, the facility received a failing grade of 313.

On January 24, 1996, Days Inns notified Patel that the facility had failed the December 29, 1995 inspection. It also informed him that he was in default of his quality assurance obligations under the franchise agreement and that he would have 30 days within which to cure the defaults identified during the December 29, 1995 inspection. If he did not fix the problems, Days Inns advised Patel that the franchise agreement would be subject to termination.

On October 31, 1996, Days Inns conducted a second quality assurance inspection of the facility. During this inspection, the facility again received a failing grade of 254. On December 3, 1996, Days Inns

---

1. Patel also signed a guaranty of his obligations under the franchise agreement. In the guaranty, Patel agreed that upon breaching the terms of the franchise agreement, he would immediately make each payment and perform or cause to be performed each obligation required of him under the franchise agreement.

notified Patel that the facility had failed its second consecutive quality assurance inspection, that he remained in default of his quality assurance obligations under the franchise agreement, that he would have 30 days within which to cure the defaults identified in the October 31, 1996 inspection, and that it may terminate the franchise agreement if he did not cure the default.

On December 17, 1996, C.K. Patel, the general manager of the facility, entered into an agreement with Days Inns on behalf of the facility to make certain improvements in order to satisfy Days Inns' minimum quality assurance standards. Under this agreement, C.K. Patel agreed to make all of the agreed upon improvements by February 28, 1997.

On March 6, 1997, Days Inns conducted a third quality assurance inspection of the facility. At the conclusion of the inspection, the facility received its third failing score, *i.e.*, 314. The inspector also noted that several of the problems which C.K. Patel had agreed to fix in the December 17, 1996 agreement had not been corrected. On March 18, 1997, Days Inns notified Patel that the facility had failed its third consecutive quality assurance inspection, and therefore, the agreement was subject to termination.

On August 5, 1997, Days Inns performed a fourth quality assurance inspection of the facility which resulted in a failing grade of 287. On September 8, 1997, Days Inns notified Patel that the facility had failed a fourth consecutive quality assurance inspection and warned that the franchise agreement was, therefore, subject to termination.

On November 10, 1997, Days Inns conducted a fifth quality assurance inspection. After this inspection, the facility received its fifth failing grade, *i.e.*, 283. Accordingly, on November 26, 1997, Days Inns notified Patel that it was terminating the franchise agreement, advised him that he owed approximately $2,240.37 in recurring fees, and demanded $120,000.00 in liquidated damages for breaching the franchise agreement. Since November 26, 1997, Days Inns has not operated or maintained a facility in Lincoln, Illinois.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c); *see Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir.1997).

## III. ANALYSIS

### A. *CHOICE OF LAW*

Before turning to the merits of Days Inns' motion for summary judgment, the Court must address what law to apply to the case. Days Inns asserts that New Jersey law applies because that is the law

which the franchise agreement states governs in the event of a breach of the franchise agreement. However, Days Inns argues that its motion for summary judgment should be allowed whether the Court applies New Jersey or Illinois law and cites case law from both states in support of its motion.

Patel neither disputes that New Jersey law governs this case, nor does he expressly admit that that State's law applies in this case. Like Days Inns, Patel cites case law from both states in support of his response to Days Inns' motion for summary judgment.

Generally, "when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.... Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid–Valley, Inc.*, 942 F.2d 425, 426–27 (7th Cir.1991). However, the Seventh Circuit has determined that a party can raise a conflict of law issue by relying exclusively upon the law of one particular state. *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir.1998). Here, because the parties have cited case law from both New Jersey and Illinois, the Court will assume that a conflict of law issue exists and will discuss its ramifications.

■ "Because this is an action within the district court's diversity jurisdiction, Illinois' choice of law rules determine the applicable substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). In disputes such as this one that arise from a contract, Illinois law respects the contract's choice-of-law clause as long as the contract is valid. *Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir.1994)." *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1184–85 (7th Cir.1996).

In the instant case, Patel has not challenged the validity of the contract. Therefore, the Court finds that New Jersey's law governs this suit as provided in section 28 of the franchise agreement.

### B. *BREACH OF CONTRACT*

■ In order to succeed on its motion for summary judgment on its breach of contract claim under New Jersey law, Days Inns must establish that it had a valid and binding contractual relationship with Patel, that it complied with and performed its obligations under the contract, that Patel breached the contract, and that it suffered damages as a consequence. *National Utility Serv. Inc. v. Chesapeake Corp.*, 45 F.Supp.2d 438, 448 (D.N.J.1999) (applying New Jersey law); *AT & T Credit Corp. v. Zurich Data Corp.*, 37 F.Supp.2d 367, 370 (D.N.J.1999) (applying New Jersey law).

In the present case, the Court finds that Days Inns has established all of the elements necessary to prevail on its breach of contract claim. As previously noted by the Court, Patel does not challenge either the existence or the validity of the franchise agreement. Days Inns has presented the Court with a signed copy of the franchise agreement. The Court finds that this signed franchise agreement constitutes a valid and binding contract satisfying the first essential element of Days Inns' *prima facie* case.

Moreover, the Court finds no evidence in the record that Days Inns failed to comply with its obligations under the franchise agreement. Thus, the Court finds that Days Inns has established the second element of its breach of contract claim.

Third, the Court finds that Patel breached the franchise agreement by failing to meet Days Inns' quality assurance minimum standards. Section 3(a) of the franchise agreement required Patel to score at least a 425 or equivalent score within nine months after the effective date of the franchise agreement, and if he did not do so, Days Inns reserved the right to terminate the franchise agreement. In the five inspections performed by Days Inns beginning on December 29, 1995, and continuing

thereafter, Patel's facility never received a score of 425. Accordingly, the Court finds that Patel breached the franchise agreement.

Finally, the Court finds that Days Inns suffered damages as a consequence. Days Inns had contracted with Patel for him to operate the facility for 15 years but was forced to terminate the franchise agreement well before the end of this term. Since the termination of the franchise agreement, Days Inns has not operated or maintained a facility in Lincoln, Illinois, and Days Inns has suffered a loss of profits and recurring fees as a result as verified by C. Wayne Miller (Days Inns' Vice–President of Franchise Administration) in his affidavit.

Accordingly, the Court finds that no genuine issues of material fact exist and that Days Inns is entitled to summary judgment as a matter of law on Counts I, II, and III of its Complaint.

### C. DEFENSES

#### 1. Commercial impossibility/impracticality/frustration

■ Although Patel does not deny that he breached the franchise agreement, he, nevertheless, asserts that he is not liable based upon the doctrines of commercial impossibility, commercial impracticality, and commercial frustration.[2] Patel claims that an entire stretch of Lincoln Parkway (a/k/a old Route 66), which led from Interstate 55 to the facility, was closed from June 27, 1996, to September 25, 1997, due to bridge repair being performed by the Illinois Department of Transportation. Patel asserts that the closure of Lincoln Parkway prevented easy access to his facility. As a result of this closure, Patel argues that it became commercially impossible, it was commercially impractical, and/or his ability to perform his obligations under the franchise agreement was commercially frustrated, thereby relieving him of his duties under the franchise agreement.

■ The Court disagrees. New Jersey courts have recognized the doctrine of commercial impossibility or impracticality and have adopted these doctrines as established in § 261 of the Restatement (Second) Contracts. *Seitz v. Mark–O–Lite Sign Contractors, Inc.*, 210 N.J. 646, 651–52, 510 A.2d 319, 322 (1986). However, simple inability to pay does not create an impossibility or impracticality which excuses a party's performance of his contractual obligations. *Rothman Realty Corp. v. Bereck*, 140 N.J.Super. 72, 76, 355 A.2d 201, 203 (App.Div.1976), *rev'd on other grounds* 73 N.J. 590, 376 A.2d 902 (1977).

Although Patel denies this characterization of his defense, his defense is simply one of inability to pay: due to the closure of the road, I lost business and, therefore, was unable to expend the funds necessary to meet Days Inns' quality assurance standards. As such, his defense is insufficient

**2.** In his Answer, Patel also raised the following affirmative defenses: (1) Days Inns failed to provide a disclosure as required by the Illinois Franchise Disclosure Act; (2) he suffered a "casualty" as defined by the franchise agreement; and (3) Days Inns waived any defaults alleged by Days Inns. In his response to Days Inns' motion for summary judgment, Patel withdrew his affirmative defense based upon the Illinois Franchise Disclosure Act. As for his casualty defense and his waiver defense, the Court finds them to be meritless. Section 25 of the franchise agreement clearly provides that "[n]o failure or delay [by Days Inns] in requiring strict compliance with any obligation of this Agreement ... shall constitute a waiver or modification of any such obligation, requirement, right, or remedy or preclude exercise of any such right or remedy or the right to require strict compliance with any obligation set forth herein." As for Patel's casualty defense, the term casualty is clearly limited in section 19(c) of the franchise agreement to apply only to casualty of the *facility* such that it cannot operate. The Court is unaware of any evidence indicating that the facility could not operate, nor has the Court been presented with any evidence that Patel advised Days Inns in writing of the casualty as required by section 19(c). Accordingly, the Court finds that these three affirmative defenses do not preclude it from entering summary judgment in favor of Days Inns.

under New Jersey law to preclude summary judgment in Days Inns' favor.

Moreover, the Court finds as a matter of law that while the bridge work and the road closure might have affected the patronage of the facility, it had no effect upon his ability, duty, or obligation to comply with Days Inns' quality assurance standards as provided for in the franchise agreement. Thus, it was not commercially impossible or impractical for Patel to have complied with his obligations under the franchise agreement.

■■■ New Jersey courts have also recognized the doctrine of commercial frustration. *A–Leet Leasing Corp. v. Kingshead Corp.*, 150 N.J.Super. 384, 397, 375 A.2d 1208, 1214 (App.Div.1977). In New Jersey, a contract is to be considered "subject to the implied condition that the parties shall be excused in case, before breach, the state of things constituting the fundamental basis of the contract ceases to exist without default of either of the parties." *Id.*, quoting *Edwards v. Leopoldi*, 20 N.J.Super. 43, 54, 89 A.2d 264, 270 (App.Div.1952). The doctrine, however, is not to be invoked lightly in order to relieve a party of his contractual duties; rather, "the evidence must be clear, convincing and adequate." *Id.*

■■■ Here, the commercial frustration doctrine does not relieve Patel of his duty to comply with his obligations contained within the franchise agreement because he was in breach of the franchise agreement prior to the bridge construction, *i.e.*, the event which Patel claims commercially frustrated his ability to comply with and constitutes grounds to relieve him of his contractual duties. "The application of the frustration of purpose doctrine, as applied in New Jersey, requires, as a threshold circumstance, that the party claiming the benefit of the doctrine may not already be in breach of contract at the time of the events giving rise to the application of the doctrine." *General Elec. Capital Corp. v. Charleston*, 1989 WL 9363, * 7 (E.D.Pa. Feb.6, 1989) (applying New Jersey law).

Even if the Court were to find (which it does not) that the bridge/road work constituted grounds to relieve Patel's duties under the franchise agreement based upon the doctrine of commercial frustration, the doctrine would not apply because the facility failed its first quality assurance inspection on December 29, 1995. Pursuant to section 3 of the franchise agreement, Patel had thirty days within which to bring the facility within Days Inns' quality assurance standards, and if he did not, Days Inns retained the right to terminate the franchise agreement.

According to Patel, the bridge/road work did not commence until June 1996, yet the facility continued to fail inspection as late as October 1996. Therefore, Patel had breached the franchise agreement prior to the event which allegedly constituted grounds relieving him of his duties based upon the doctrine of commercial frustration. As such, the doctrine of commercial frustration is inapposite in this case. *Id.* Accordingly, the Court finds that Patel's affirmative defenses based upon the doctrines of commercial impossibility, commercial impracticality, and commercial frustration fail as a matter of law and are insufficient to preclude the Court from entering summary judgment in Days Inns' favor.

### 2. *Liquidated damages*

Patel has also raised an affirmative defense regarding the liquidated damages sought by Days Inns. Patel argues that it would not be difficult for the Court to calculate the actual damages sustained by Days Inns in this case. In fact, Patel asserts that section 20 of the franchise agreement provides a method for calculating actual damages. Moreover, Patel contends that awarding liquidated damages in this case would be punitive because the amount of liquidated damages which Days Inns would receive under section 20 of the franchise agreement is much greater than the actual damages which it has sustained and would be entitled to under section 20 of the franchise agreement. Therefore,

Patel argues that Days Inns should not be awarded liquidated damages.

Under New Jersey law, the validity of a stipulated damages clause is a question of law for the trial judge to decide, and "[t]he burden of proof is upon the party challenging the liquidated damages clause." *Naporano Assocs., L.P. v. B & P Builders*, 309 N.J.Super. 166, 175, 706 A.2d 1123, 1127 (App.Div.1998). In *Metlife Capital Fin. Corp. v. Washington Ave. Assocs. L.P.*, 159 N.J. 484, 493–95, 732 A.2d 493, 498–499 (N.J.1999), the Supreme Court of New Jersey set forth the historical view which New Jersey courts have taken towards agreed upon liquidated damages clauses. The Supreme Court of New Jersey concluded by explaining

> that "[s]o viewed, 'reasonableness' emerges as the standard for deciding the validity of stipulated damages clauses." *Id.* at 249, 645 A.2d 100. Treating reasonableness "as the touchstone," we noted that the difficulty in assessing damages, intention of the parties, the actual damages sustained, and the bargaining power of the parties all affect the validity of a stipulated damages clause. *Id.* at 250–54, 645 A.2d 100. We did not, however, consider any of those factors dispositive, and remanded the case, leaving "to the sound discretion of the trial court the extent to which additional proof is necessary on the reasonableness of the clause." *Id.* at 258, 645 A.2d 100.

*Id.* at 495, 732 A.2d at 499, quoting *Wasserman's Inc. v. Middletown*, 137 N.J. 238, 645 A.2d 100 (N.J.1994). In short, " '[t]he overall single test of validity is whether the [stipulated damage] clause is reasonable under the totality of the circumstances' . . . ." *Metlife Capital*, 159 N.J. at 494, 732 A.2d at 499, quoting *Wassenaar v. Panos*, 111 Wis.2d 518, 524, 331 N.W.2d 357, 361 (Wis.1983).

In the present case, the Court finds that under the totality of the circumstances the stipulated liquidated damages clause contained within section 20 of the franchise agreement is valid and enforceable and that Patel has failed to satisfy his burden of proving otherwise. First, contrary to his argument now, Patel acknowledged when he signed the franchise agreement that actual damages suffered by Days Inns in the event that he breached the franchise agreement would be difficult to calculate. Section 20 clearly provides that in the event of a breach, Patel shall pay "Liquidated Damages, because actual damages incurred by [Days Inns] will be difficult or impossible to ascertain. . . ."

Furthermore, C. Wayne Miller tendered unopposed testimony that the liquidated damages provision is based upon Days Inns' operating experience over the years. Miller testified that due to the nature of the business, the prices for motel rooms vary greatly from patron to patron which affects Days Inns' revenue and recurring fees. He also testified that the facility's condition can affect the revenue and recurring fees generated, and thus, Days Inns has instituted a quality assurance standard to maintain the public's good will and patronage. Based upon Miller's affidavit, the Court finds that Days Inns' actual damages are difficult to calculate. *See Ramada Franchise Sys. v. Motor Inn Inv. Corp.*, 755 F.Supp. 1570, 1578 (S.D.Ga.1991) (holding that the harm caused by premature termination of franchise agreements "is of a kind that is difficult or impossible to estimate accurately" and, thus, liquidated damages clauses are common in franchise agreements).

Second, even if, as Patel asserts, the actual damages suffered by Days Inns are less than the liquidated damages which it seeks, the Court, nevertheless, believes that Days Inns is entitled to liquidated damages. Section 20 of the franchise agreement provides that "in no event shall the amount payable pursuant to this Section be less than the product of $2,000.00 multiplied by the number of guest rooms in the Facility." Thus, the Court believes that the parties intended that at a minimum, Days Inns would receive $120,000.00 (*i.e.*, $2,000.00 times the 60 rooms in the facility) if Patel breached the franchise agreement.

Third, the Court does not believe that the liquidated damages clause is punitive. Again, contrary to his argument now, Patel admitted that the liquidated damages provision was not punitive as section 20 clearly states that the clause is not a penalty. Fourth, because Patel breached the franchise agreement in its third year, Days Inns lost twelve years of revenue and recurring fees. Since Patel's breach, Days Inns has been unable to operate or maintain a replacement facility in Lincoln, Illinois.

Fifth, although C.K. Patel stated in his affidavit that Days Inns prepared the franchise agreement and that the terms of the franchise agreement were not negotiated, section 22 of the franchise agreement indicates that Ishwarlal Patel "ha[d] received, at least 10 business days prior to execution of this Agreement, read and understood [Days Inns'] current Uniform Franchise Offering Circular ... and has had ample opportunity to consult with advisors. It [Patel] has independently investigated the risks of the transactions contemplated hereby...." Thus, the Court does not believe that the parties' bargaining power was so unequal as to require the Court to disregard the stipulated liquidated damages clause.

Finally, Patel has failed to offer any proof, other than mere argument by counsel, as a basis for setting aside the liquidated damages provision in section 20 of the franchise agreement. Accordingly, the Court finds that the liquidated damages clause contained within section 20 of the franchise agreement is reasonable, valid, and enforceable and that Days Inns in entitled to the $120,000.00 in liquidated damages which it seeks as a result of Patel's breach of the franchise agreement.

### D. *MOTION TO STRIKE*

In a separate motion, Days Inns asks the Court to strike certain portions of Patel's response to its motion for summary judgment. Specifically, Days Inns asks the Court to strike all of the factual allega-tions contained within Patel's response. Days Inns argues that if Patel wanted the Court to consider additional factual allegations not contained within its statement of undisputed facts, Patel needed to file an additional statement of undisputed facts as required by Local Rule 7.1(D)(3). Patel did not, and therefore, Days Inns asks the Court to strike all of his factual allegations and not to consider those facts in ruling upon its motion for summary judgment.

Days Inn is correct that Patel should have filed an additional statement of undisputed facts pursuant to Local Rule 7.1(D)(3). Days Inns is also correct that the Court has the authority to strike portions of Patel's response based upon his failure to file a statement of undisputed facts. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994). However, the Court declines Days Inns' request to do so.

Even when the Court considers all of the factual allegations contained within Patel's response as being true (as it has done), Days Inns is still entitled to summary judgment as a matter of law. As the Court has explained above, the complete closure of Lincoln Parkway is insufficient to relieve Patel of his contractual duties under the franchise agreement based upon the doctrines of commercial impossibility, commercial impracticality, and/or commercial frustration. The franchise agreement existed; Days Inns fulfilled its obligations; Patel violated the franchise agreement; and Days Inns suffered damages as a result of Patel's breach. Accordingly, Days Inns is entitled to summary judgment despite Patel's improper factual allegations, and there is no reason to strike them from the record.

### E. *RECURRING COSTS*

Finally, in Count II of its Complaint, Days Inns seeks $2,240.37 in recurring fees. Days Inns has offered a letter dated November 26, 1997, from Russell A. Moserowitz, its Vice President of Franchise Administration, in support of assertion that Patel owes it $2,240.37 in recurring fees.

Although the Court has found that Patel breached the franchise agreement, that his affirmative defenses do not relieve him of his obligations under the franchise agreement, and that Patel owes Days Inns $120,000.00 in liquidated damages, the Court also finds that a genuine issue of material fact exists regarding whether Patel owes Days Inns $2,240.37 in recurring fees. As part of his response to Days Inns' motion for summary judgment, Patel attached an affidavit from C.K. Patel in which C.K. Patel testified that the recurring fees owed to Days Inns have been paid in full.[3] Thus, the Court must conduct a hearing in order to determine whether these fees are still owed by Patel to Days Inns, whether Patel has paid the fees in full, or whether Patel has paid the fees in part.

*Ergo,* Plaintiff's Motion for Summary Judgment is ALLOWED. Accordingly, summary judgment is hereby entered in favor of Plaintiff and against Defendant as to Counts I, II, and III of Plaintiff's Complaint.

Pursuant to sections 19 and 20 of the franchise agreement, Plaintiff is hereby awarded $120,000.00.

However, the Court finds that a genuine issue of material fact exists regarding the $2,240.37 in recurring fees sought by Plaintiff. Thus, a hearing is necessary to determine whether Defendant is entitled to the recurring fees which it seeks.

Finally, Plaintiff's Motion to Strike Portions of Defendant's Response to Summary Judgment is DENIED.

---

**3.** Patel is entitled to file this affidavit in support of his response without having to file an additional statement of undisputed facts.