Strafford
No. 2005-268

GENERAL LINEN SERVICES, INC.

v.

ELIAS SMIRNIOUDIS

Argued: February 9, 2006
Opinion Issued: April 26, 2006

*Hanlon & Zubkus*, of Rochester (*Mark D. Hanlon* on the brief and orally), for the plaintiff.

*Crisp & Richmond, PLLC*, of Concord (*Jack P. Crisp, Jr.* and *Andrew M. Mierins* on the brief, and *Mr. Mierins* orally), for the defendant.

BRODERICK, C.J. The defendant, Elias Smirnioudis, appeals a decision of the Superior Court (*Fauver*, J.) awarding the plaintiff, General Linen Services, Inc. (General Linen), damages plus interest, costs and reasonable attorney's fees for breach of contract. Smirnioudis challenges aspects of the damages award. We affirm in part, vacate in part, and remand.

We recite the facts as found by the trial court. General Linen is engaged in the business of leasing linens, clothing and other items. Smirnioudis is the owner and operator of two restaurants, Windmill Restaurant I (Windmill I) in east Concord, and Windmill Restaurant II (Windmill II) in Franklin. In July 2000, Smirnioudis and General Linen entered into a rental service agreement whereby General Linen would provide the restaurants certain linens, including cook shirts, pants, aprons, and towels. The agreement was negotiated between Smirnioudis and John Jamrog, a General Linen sales representative. Smirnioudis signed the documents as the customer and executed a personal guaranty. General Linen provided linens to the restaurants until November 2000 when Smirnioudis notified General Linen that he wanted to cancel the contract. Smirnioudis and his employees testified at trial that they had told the delivery driver on a regular basis that the linens were substandard. Other than the cancellation letter, however, no evidence was offered to show that any written notification was provided to General Linen describing the poor quality of the linens. Smirnioudis began doing business with another linen supplier, and in May 2001, Windmill II was destroyed by fire.

General Linen filed suit against Smirnioudis for breach of contract. It claimed that Smirnioudis failed to comply with the contract's notice provision concerning customer dissatisfaction and contract cancellation. Smirnioudis argued, however, that because General Linen breached the contract by providing inadequate linens, his cancellation of the agreement was justified. He also claimed that his poor command of the English language obstructed his understanding of the terms and conditions of the agreements, making the contract voidable.

After a trial on the merits, the trial court ruled that Smirnioudis breached the agreement. In so ruling, the trial court rejected Smirnioudis' various arguments concerning the inadequate quality of the linens and determined that he had the requisite understanding of the terms and conditions of the agreement. The trial court subsequently conducted a hearing on damages. In assessing damages, the trial court concluded that General Linen was entitled to the average weekly rental charge for the remaining term of the three-year contract, less costs General Linen would not incur for servicing the contract. It rejected Smirnioudis' claim that the doctrine of commercial frustration limited the calculation of damages for Windmill II up to the date it was destroyed by fire because the date of Smirnioudis' breach preceded the fire. The trial court awarded General Linen contract damages, plus interest, costs and reasonable attorney's fees under the contract. After a motion to reconsider, the court made one alteration to the damages award but otherwise denied the remainder of the motion. Smirnioudis appealed.

On appeal, Smirnioudis argues that the trial court erred in its calculation of damages by: (1) not applying the doctrine of commercial frustration based upon the destruction of Windmill II; (2) failing to properly determine the replacement cost deduction; (3) misinterpreting evidence establishing its final payment to General Linen; and (4) awarding damages for the three-year contract term when the parties lacked a meeting of the minds on that term.

We observe that mathematical certainty is not required in computing damages. *T&M Assoc. v. Goodrich*, 150 N.H. 161, 164 (2003). "The law does, however, require an indication that the award of damages was reasonable." *Id.* We will not overturn a damage award unless it is clearly erroneous. *Id.* Further, we will review all questions of law *de novo* and uphold all findings of fact unless they are lacking in evidentiary support or erroneous as a matter of law. *Sherryland v. Snuffer*, 150 N.H. 262, 265 (2003).

We first address Smirnioudis' argument that the trial court erred by not applying the doctrine of commercial frustration. He argues that the destruction of Windmill II by fire eliminated the need for linens at that location and thus excused his performance under the contract. Thus, Smirnioudis contends that General Linen should only receive lost profit damages for Windmill II up to the date of the fire. We disagree.

The doctrine of commercial frustration "assumes the possibility of literal performance but excuses performance because supervening events have essentially destroyed the purpose for which the contract was made." *Perry v. Company*, 101 N.H. 97, 98 (1957). Under the doctrine, "a contract is to be considered subject to the implied condition that the parties shall be excused in case, *before breach*, the state of things constituting the fundamental basis of the contract ceases to exist without default of either of the parties." *Days Inn of America, Inc. v. Patel*, 88 F. Supp. 2d 928, 934 (C.D. Ill. 2000) (quotations omitted; emphasis added) (applying New Jersey law); *see also Johnson v. Atkins*, 127 P.2d 1027, 1028 (Cal. Dist. Ct. App. 1942). Therefore, for the doctrine to apply, the supervening event must occur before the party seeking its protection otherwise breaches the contract. Accordingly, because "the party claiming the benefit of the doctrine may not already be in breach of contract at the time of the events giving rise to the application of the doctrine," *Days Inn of America, Inc.*, 88 F. Supp. 2d at 934 (quotation omitted) (applying New Jersey law), and Smirnioudis breached the leasing agreement prior to the fire, we conclude that the doctrine of commercial frustration does not apply to this case. *See Gen. Elec. Capital Corp. v. Charleston*, 1989 WL 9363, at *7 (E.D. Pa. Feb. 6, 1989) (party could not claim benefit of commercial frustration doctrine

when party was in breach of contract at time of hotel fire) (applying New Jersey law).

Smirnioudis next argues that the trial court failed to properly calculate the replacement cost of linens when deducting that cost from damages due General Linen. Specifically, he contends that the trial court erred by deducting the replacement cost for a *single* type of linen item, such as a pair of pants, rather than accounting for his use of *multiples* of each type of linen item. We conclude that the record is sufficiently confusing as to warrant remand for reconsideration of that portion of the damages award.

At the trial on damages, General Linen's witness reviewed the company's methodology for calculating damages. In short, to determine its anticipated lost profit, the company calculated the average weekly rental charge, then deducted certain costs. Specifically, it deducted those costs it would not have to incur to service the Smirnioudis account, such as delivery and laundry costs, since the contract was not carried out. Included in the deductions was the replacement cost of the linens that General Linen otherwise would have incurred to replace items as they wore out from normal usage. A trial exhibit included on appeal appears to itemize the replacement cost for single items, such as an apron bib and a kitchen towel. The total cost of replacing these single items was calculated to be $65.59. The trial court used this figure when calculating damages and does not appear to have determined how many of each item Smirnioudis had been using. For example, while the replacement cost for a single apron bib was $12.73, if Smirnioudis were using twenty apron bibs, the replacement cost for that category of item presumably would have been $254.60. Indeed, another trial exhibit included in the appellate record suggests that Smirnioudis had been using multiples of the different linen items.

■ Notably, in its brief, General Linen did not address Smirnioudis' argument concerning the replacement cost aspect of the trial court's calculation of damages. At trial, General Linen acknowledged that deduction for replacement cost was proper. Although mathematical certainty is not required for the calculation of damages, *see T&M Assoc.*, 150 N.H. at 164, the record leaves us uncertain whether the trial court recognized Smirnioudis' multiple use of linen items when calculating the replacement cost deduction. Accordingly, we vacate that portion of the damages award and remand.

We next address Smirnioudis' argument that the trial court misinterpreted evidence demonstrating that his last payment to General Linen occurred in November, not October, 2000. Thus, he contends that he should be credited for three additional weeks that he accepted and paid for linen deliveries. The trial court accepted General Linen's calculation of 140

weeks remaining on the contract to determine damages. The invoice exhibits Smirnioudis relies upon to assert that he had accepted and paid for an additional three weeks of deliveries show two different dates: date of invoice and purchase order date. While the date of invoice changes and extends into November 2000, the purchase order date is fixed on each. Further, testimony at trial supports the calculation of 140 weeks. Because the trial court's finding is supported by the evidence, we will not disturb it. *See Crown Paper Co. v. City of Berlin*, 142 N.H. 563, 566 (1997).

Finally, we address Smirnioudis' argument that the parties did not have a meeting of the minds on the duration term in the contract. He contends that the General Linen representative did not verbally disclose the three-year term of the contract and that the evidence established that he cannot read the English language. Therefore, according to Smirnioudis, the three-year duration term is unenforceable. We disagree.

While originally from Greece, as of 2004 Smirnioudis has been in the United States for thirty years and in the restaurant business for thirteen years. At trial, Smirnioudis made the global assertion that he should be excused from the contract in its entirety because he did not understand its terms due to his poor command of the English language. The trial court rejected his argument, finding:

> The defendant has spent a number of years in this country and he has been owner and operator of two commercial establishments for some time. The Court finds that he had the requisite understanding of the terms and conditions of the agreement to bind himself to its terms. Further, the terms and conditions were explained to him by [the General Linen representative].

In his argument before us, Smirnioudis isolates his purported inability to *read* English to nullify one term of the contract. The trial court, however, rejected the notion that Smirnioudis had limited understanding of the English language which encumbered his ability to understand the terms of the contract. While a General Linen representative testified at trial that he did not verbally discuss with Smirnioudis the duration of the contract, the trial court's finding that Smirnioudis had the "requisite understanding of the terms and conditions of the agreement" was not solely based upon the verbal discussion between the two. Because Smirnioudis makes no allegation that the contract itself lacked clarity on its duration, and the trial court made sufficient findings based upon the evidence that he understood the terms and conditions of the agreement, we will not disturb the trial court's assessment of damages for the three-

year duration of the contract. *See Crown Paper Co.,* 142 N.H. at 566 (finding of fact upheld unless unsupported by the evidence).

*Affirmed in part; vacated in part; and remanded.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.